structures covered by the plan filed. It may well be that, in order to avail itself of this right as to structures erected after the 10-year period has expired, the city must have occupied within the 10 years those constructed within that time. Understanding these three questions to refer to structures covered by the plan filed, I think we should refuse to decide as prayed for by the plaintiff.

Second. I think the plaintiff is right in the fourth prayer. It seems to me clear that water rates, paid by private parties to the city, constitute "revenue," within the meaning of that word as used in the ordinance, and the city has no right to use the additional space for the purpose of pumping water for such private use without compensation. Much of the water used is for public purposes, and for this no water rates are paid; but a large amount is received as water rates for merely private purposes and from private persons, and this certainly is "revenue," and for it compensation should be paid.

Third. The fifth prayer is a peculiar one. It involves the question in form whether the city can use the so-called additional space for carrying on the business of buying or generating and transmitting electricity for sale to individuals and corporations for private use. It is not claimed it can now do so, because no power to carry on such a business at all is given the city under its charter, although the ordinance apparently gives the right to use the additional space. But it is said there is a movement started to secure an amendment to the charter giving the city this power, and therefore we are by this submission gravely asked to say whether such an amendment, if made by the Legislature, would be constitutional. This is the first time I ever heard such a proposition made. It is time enough to pass upon the constitutionality of an act of the Legislature after it has become a law. Courts do not instruct the Legislature in advance as to what power they have under the Constitution to pass laws. We must, I think, decline to pass upon this question.

Fourth. The sixth prayer is correct, and should be found for the plaintiff. The additional space cannot, of course, be used for private purposes, or a public purpose from which a "revenue" is derived, without compensation.

Fifth. Inasmuch as we find for the plaintiff in some respects and for the city in others, no costs should be allowed. All concur.

======

KLAUCK v. FEDERAL INS. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

1. PLEADING (§ 217*)—DEMURRER TO REPLY—EFFECT AS OPENING RECORD.

On demurrer to a reply for insufficiency, plaintiff may attack counterclaims as not sufficient to constitute defenses to the action, since, if the answer set up no good counterclaims, defendant could not complain that plaintiff failed to make a sufficient reply thereto.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 540–548; Dec. Dig. § 217.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. DAMAGES (§ 23*) — BREACH — DAMAGES—PROVISIONS FOR BENEFIT OF THIRD PERSON.

If the owner of stranded vessels agreed with a company which had insured them to waive its right under the policy to float the vessels itself and be reimbursed by the insurer, in consideration of the insurer's express agreement that it would have them floated by a certain date, and the insurer contracted with plaintiff's assignor to effect the floating of the vessels within the specified time, the assignor knowing of the agreement, upon the assignor's breach of the contract as to the time for performance, the insurer would be entitled to recover from the assignor the damages sustained by reason of its not fulfilling its agreement with the owner.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 62; Dec. Dig. § 23.*]

3. SET-OFF AND COUNTERCLAIM (§ 24*)—SUBJECT-MATTER.

Plaintiff's assignor having agreed with the insurer to do an act which would prevent damage to the insurer, and not merely to indemnify it against loss, the insurer, upon being sued for the contract price of releasing the boats, could counterclaim for the damages it had sustained from the assignor's failure to finish the work within the specified time, though it had not yet paid the damages to the owner.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 39–42; Dec. Dig. § 24.*]

4. PLEADING (§ 214*)—DEMURRER—EFFECT.

Upon demurrer to counterclaims, the facts alleged therein will be taken as true in passing upon their sufficiency.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

5. CONTRACTS (§ 187*)—PROVISIONS FOR BENEFIT OF THIRD PERSONS—RIGHT OF ACTION BY THIRD PERSON.

If an insurer of beached vessels with the assent of the owner contracted with another to release them, incorporating in the contract a time limit within which the work was to be done for the express benefit of the owner, to the knowledge of the contractor, the owner would have a right to recover from the contractor for failure to finish the work within the stated time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 798; Dec. Dig. § 187.*]

6. EVIDENCE (§ 459*)—PAROL EVIDENCE—EXPLAINING TERMS OF CONTRACT.

The character of a party to a contract as trustee or agent of a third person may be shown by parol evidence, so as to protect the third person as principal or cestui que trust; and hence, if an insurer of beached vessels with the assent of the owner contracted with another to release them, incorporating in the contract a time limit for the work for the express benefit of the owner, to the knowledge of the contractor, and was sued for the contract price, and counterclaimed for damages for failure to finish the work within the prescribed time, the insurer could be shown to be liable over as trustee to the owner as cestui que trust for any recovery on the counterclaim.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2109–2114; Dec. Dig. § 459.*]

7. INSURANCE (§ 603*)—DISCHARGE OF INSURER—CONSTRUCTION.

The owner of stranded vessels entitled under an insurance policy to float the vessels itself and be reimbursed by the insurer, permitted the insurer to contract for floating the vessels within a stated time. The contractor failed to finish within the stated time, and sued the insurer for the contract price, upon which the insurer contracted with the owner that the owner should take charge of the defense and of any other action on the same contract at its own expense; that insurer would pay any judgment recovered against them, not exceeding a specified amount claimed

*For other cases see same topic &-§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as the owner's damages from delay in releasing the vessels, and if the judgment were less than that sum to pay the balance of the sum to the owner; that the owner would secure the insurer against any other liability in the suits and would dismiss suits brought by it against the insurer and the contractor, and would enforce its claims in that action; and that it would release the insurer from all claims, except so far as they could be worked out in that action, and would not enforce them against the insurer. *Held*, that the agreement did not release all the owner's claims against the insurer, but provided that they should be enforced through the action then begun, and that the owner, having secured all it was entitled to in the action, should release the insurer from payment of any additional sum.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 603.*]

Appeal from Special Term, Erie County.

Action by John W. Klauck against the Federal Insurance Company and others. From a judgment overruling a demurrer to parts of the reply (60 Misc. Rep. 170, 182, 111 N. Y. Supp. 1037), defendants appeal. Reversed, and demurrer sustained.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Brown, Ely & Richards, H. D. Goulder, and D. J. Kenefick, for appellants.

Clinton & Clinton, for respondent.

WILLIAMS, J. The interlocutory judgment should be reversed, and the demurrer sustained, with costs and the usual leave to plead over.

The action was brought to recover the amount claimed to be due upon a contract made between plaintiff's assignor and the defendants, under which the plaintiff's assignor was to release certain lake freight vessels from the beach at Buffalo, where they had stranded. The plaintiff sued for the contract price, $39,500. He alleged in his complaint that his assignor had duly performed all the conditions of the contract, except as to the time of completion, and that the condition with respect thereto had been waived by the defendants. The defendants by their answer admitted many of the allegations of the complaint, and interposed a general denial to the remaining allegations, among which was that of waiver of the condition as to the time of completion of the contract. Then by the second and third defenses the defendants interposed counterclaims to the plaintiff's alleged cause of action. These two defenses related to the same counterclaims, and largely the facts alleged were the same. In both it was alleged (in brief) that the defendants were marine underwriters on the vessels in question; that the vessels were stranded January 20, 1907; that the owner thereof had the exclusive right under the policies to release the vessels itself, and the defendants were under obligation to reimburse the owner for the expense incurred in so doing; that the defendants, with the assent of the owner, however, called for proposals for releasing the vessels; that the plaintiff's assignor submitted a proposal to do the work for the amount above specified, and guaran-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

teed to release the vessels by April 15, 1907, payment to be made upon the completion of the contract; that the owner thereupon waived its right to release the vessels itself, and consented that the defendants should undertake the release themselves; that the proposal of the plaintiff's assignor was then accepted by the defendants, and the work was entered upon under that contract, but the contract was not completed by the release of the vessels until June 26, and July 15, 1907, respectively, and then only with the assistance of the owner, its appliances, and the labor of its employés, at an expense to the owner of $9,624.50; that the owner was deprived of the use of the vessels from April 15th to June 26th and July 15th, and suffered damage by reason thereof in the sum of $39,250.20, in addition to the expense incurred as above stated. These are the amounts of the counterclaims set up in the two defenses; but they are primarily the damages of the owner of the vessels, and not of the defendants. For the purpose of making them proper subjects of counterclaims in this action, other allegations are made in these two defenses. The damages are the same in both; but the allegations are different, to support two different theories of the defense.

In the second it is alleged that in reliance upon the contract made by the defendants with plaintiff's assignor, and especially the time guaranty therein, the defendants made an agreement with the owner of the vessels whereby the owner agreed to waive its right under the policies to release the vessels itself, and require the defendants to reimburse it for the expense incurred in doing so, and to permit the defendants to release the vessels, and to make the contract with the plaintiff's assignor to do the work on the terms of the proposal; and in consideration thereof the defendants agreed with the owner that the vessels would be released by April 15, 1907, and thereupon the defendants made the contract with the plaintiff's assignor, for the purpose of enabling them to perform their obligation to the owner of the vessels under the policies, and their agreement with such owner as to the time limit of aforesaid, all of which was known to plaintiff's assignor, and that the defendants have become liable to the owner for the damage suffered by it, and have therefore suffered damage themselves in the like amount. In the third defense it is alleged that in consideration of and relying upon the proposal, and especially the time guaranty therein, the owner of the vessels agreed with the defendants that it would waive its right under the policies to release the vessels itself, and require the defendants to reimburse it for the expense incurred in doing so, and to permit the defendants to release the vessels, and to make the contract with the plaintiff's assignor to do the work on the terms of the proposal, for the benefit and use of the owner of the vessels, and thereupon the contract between the defendants and plaintiff's assignor was made; and that it was entered into, and especially the guaranty as to time was inserted, for the express benefit and use of the owner of the vessels, and for the purpose of enabling the defendants to perform their obligation to the owner of the vessels under the policies, all of which was known to the plaintiff's assignors, and that the defendants have become liable to the owner

for the damages suffered by it, and have therefore suffered damages themselves in the like amount.

So far as we are able to discover, the difference in the two defenses is that in the former, it is alleged, first, that the defendants contracted with the owner that the vessels should be released by April 15, 1907, and, second, that they made the agreement with plaintiff's assignor for the purpose in part of enabling them to perform this provision in their agreement; while in the latter these two allegations are omitted, and it is alleged, instead thereof, first, that the owner permitted defendants to make the contract with plaintiff's assignor for the benefit and use of the owner of the vessels, and, second, that they did make the contract for the benefit and use of such owner. The claim is that by reason of these premises the defendants became liable over to the owners for these damages, and therefore may counterclaim them in this action.

The plaintiff replied to these two defenses by way of counterclaim, admitting some facts therein alleged, and denying others, and then set up new facts by way of affirmative answer and defense to the counterclaims. The replies to the two counterclaims are in substantially the same language. There are ten paragraphs in each reply, and the tenth is in precisely the same language in both, and these are the two paragraphs that are demurred to here. The allegations in these paragraphs are (in brief) that the defendants, soon after the commencement of this action, and before service of the answer, entered into a contract with the owner of the vessels wherein it was agreed that the owner should appear in the action and assume the full charge of the defense thereof, and any other action on the same contract, at his own expense, with power to set up any defense, set-off, or counterclaims it desired, without let or hinderance from the defendants, and that the defendants would pay any judgment recovered against them in such cases, up to, but not to exceed, $39,500, with interest from July 20, 1907, and, if the judgment was less than that, to pay the judgment, and the balance of the above amount and interest to the owner, but the defendants' liability in no case to exceed that amount and interest, and that the owner would give security to the defendants to protect them against any other liability in these suits, and would dismiss suits brought by it against the defendants and against the plaintiff's assignor, and would enforce whatever claims it had, for damages or otherwise, against defendants, in relation to their operations in releasing the vessels, and the contract therefor with plaintiff's assignor, through defendants' right to recoup and recover over therefor against the plaintiff's assignor in this action, and would release defendants from said claims, except so far as they could be worked out in this action, and would not enforce them against defendants. And then the replies proceeded to allege that by this agreement the owner had waived all claims it had against defendants for the damages claimed, and the defendants were not entitled to counterclaim the same in this action.

The defendants by their demurrer contend that these facts are insufficient in law to constitute defenses to the counterclaims. First, the plaintiff contends that the defenses, by way of counterclaims,

neither of them allege facts sufficient to constitute counterclaims to the cause of action alleged in the complaint. This plaintiff had a right to do under Baxter v. McDonnell, 154 N. Y. 432–436, 48 N. E. 816. If there were no good counterclaims set up in the answer, the defendants could not complain that the plaintiff failed to make a sufficient reply thereto.

The question as to each defense by counterclaim is whether, upon the allegations thereof, conceding them to be true, a counterclaim exists. Both counterclaims are based upon the proposition that the owner had the exclusive right to release the vessels itself. This must be deemed to be true, in view of the allegations in the pleadings and the law applicable to such policies as are here involved. In both it is alleged the owner agreed to waive this right—in the first, that this waiver was made in consideration that the defendants expressly agreed that the release should be effected by April 15th, and the defendants thereupon made the contract with plaintiff's assignor; in the second, that this waiver was made, relying upon the time guaranty in the contract with plaintiff's assignor made for the owner's express benefit. In the first the owner relies solely upon its agreement with the plaintiff, and the defendants rely upon that of the plaintiff's assignor. In the second the owner relies directly upon the guaranty made by the plaintiff's assignor for its express benefit. The counterclaims are based, not upon the whole contract with plaintiff's assignor, but the one provision, the time guaranty clause. It is alleged in both counterclaims that the plaintiff's assignor had full knowledge of all the matters set up therein.

As to the first counterclaim, the contention is that the defendants put the time guaranty clause in the contract with plaintiff's assignor in order to be able to fulfill the time guaranty agreement made with the owner, and this was known to plaintiff's assignor. Therefore the defendants may have such damages against plaintiff as the circumstances would indicate the defendants were likely to suffer. Sedgwick on Damages, § 161, and cases referred to; 8 Am. & Eng. Enc. 590, 591, and cases referred to; Booth v. Spuy. Duy. R. Mill. Co., 60 N. Y. 493; Murdock v. Jones, 3 App. Div. 221, 38 N. Y. Supp. 461. In the Booth Case Chief Judge Church said:

"It is presumed that the parties contemplate the usual and natural consequences of a breach when the contract is made; and if the contract is made with reference to special circumstances, fixing or affecting the amount of damages, such special circumstances are regarded as within the contemplation of the parties, and damages may be assessed accordingly."

In the present case the plaintiff's assignor knew that the defendants were agreeing with the owner that the vessels should be released by April 15th, and if there was a failure in this respect defendants would be liable to the owner for its damages. Therefore such damages were the measure of defendants' damages against the plaintiff's assignor for breach of the time limit guaranty in its contract. But it is said the defendants could not counterclaim these damages, because they had not been paid to the owner of the vessels. This depends upon what the construction of the contract is. If it is merely an indemnity

against loss or damage, that would follow; but it seems to me it was a contract to do a particular thing for the purpose of indemnification against liability. The failure by plaintiff's assignor to perform the time guaranty created a liability by defendants to the owner, which performance of such time guaranty would have prevented; and in such case the right of action is complete when the liability accrues. Lathrop v. Atwood, 21 Conn. 117; Rector v. Higgins, 48 N. Y. 532, 537, and cases therein referred to. In this latter case, it was said:

"The rule may be definitely drawn from numerous cases that, where indemnity only is expressed, damages must be sustained [paid] before a recovery can be had; but a positive agreement to do an act which is to prevent damage to the plaintiff will sustain an action, where the defendant neglects or refuses to do such act."

This case is commented on, distinguished, and approved in Maloney v. Nelson, 144 N. Y. 182, 186, 187, 39 N. E. 82. That case was one of express indemnity against loss and damage. The contract of indemnity simply very likely is construed to be one against loss and damage only, and in such cases damages must be paid before they can be recovered. Such a case was Dunn v. Uvalde Asphalt Pav. Co., 175 N. Y. 214, 67 N. E. 439. There the contract contained·no express stipulation that the defendant should be indemnified against liability or loss which might arise from negligent performance by the plaintiff of the work he had to do. Therefore indemnity against loss or damage only would be assumed, and no counterclaim could be sustained for loss or damage until paid. The distinction is thus made between those cases and the one we are considering, where there was a positive agreement to perform an act which would have prevented the damage complained of, but which was not performed. Without discussing this branch of the case in further detail, we think we ought not to hold, on the pleadings merely, without evidence that may be given on the trial, that this first counterclaim is insufficient in law.

As to the second counterclaim, the contention is that the time guaranty clause was put in the contract with plaintiff's assignor for the express benefit of the owner, to the knowledge of the plaintiff's assignor, and the owner waived its right to release the vessels, and permitted defendants to do it, and to make this contract, in reliance on the time guaranty clause. This is so alleged in the counterclaim, and so far as the facts are concerned it is to be considered as admitted. The court cannot determine the question otherwise in passing upon the sufficiency of the counterclaim as pleaded. The relations of the owner to the contract made between defendants and plaintiff's assignor may be established as alleged by parol evidence outside the contract itself. A trust or agency can always be shown to exist outside of the contract itself, so as to protect the outside party as principal or cestui que trust. The facts being conceded as alleged, a right to recover these damages exists in the owner, and when the defendants, as trustees, recover, they would be liable over, as alleged, to the owner as cestui que trust. We think that it should not be held that the second counterclaim is insufficient as a matter of law.

Having determined that the counterclaims were good, we come now to the demurrer itself, to the ten paragraphs of the reply, and we

are to consider whether the facts therein stated constituted a defense to the counterclaims; that is, whether, these facts being conceded, the counterclaims, otherwise good, are rendered unenforceable. The particular point made in the reply is that by the agreement set out therein, and the execution thereof, the owner of the vessels has waived, released, and given up all claims it had against the defendants, and therefore the defendants can suffer no damages such as are covered by the counterclaims; that is, the owner has no such claims left against the defendants, the defendants have none to pay, and therefore can recover no damages against the plaintiff or his assignor.

The agreement does not provide, however, that the owner releases all claims against the defendants. It provides for the enforcement of such claims through the medium of this action, and so far as they can be here enforced they are not released, but the owner of the vessels is to have the benefit thereof. Having secured all it is entitled to in this action, it releases the defendants from the payment of any remaining part thereof. The whole tenor of the agreement is the continuance of the action and the enforcement of the counterclaims herein, but no enforcement against the defendants in any other way. It is an agreement to work out the whole matter in this action, to prevent multiplicity of actions, and unnecessary expense and delay in determining the rights of the parties.

I think these paragraphs 10 fail to allege facts sufficient to defeat the counterclaims, and therefore the demurrer should be sustained. We do not consider the question whether a demurrer is proper to parts of defenses such as paragraphs 10. The parties seem to have desired the real questions to be passed upon, regardless of the technical question.

Interlocutory judgment reversed, with costs, and demurrer sustained, with costs. All concur.