(3 App. Div. 221.)

### MURDOCK v. JONES et al.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. APPEAL—REVIEW—MECHANICS' LIENS.

Under Mechanics' Lien Law, § 15, providing that in action to enforce a lien, if the party fail to establish the lien, he may nevertheless recover therein on the contract the sum due him, on appeal by a material man from a judgment discharging his lien, on the ground that nothing was due him for the materials furnished the contractor, without notice of appeal to the owner, the material man is entitled to have the judgment reviewed, in so far as it settles his account with the contractor.

2. CONTRACTS—PERFORMANCE—ARCHITECT'S CERTIFICATE.

Where the architect refuses a material man a certificate that he has performed his contract with the contractor for the material, on the ground that it was unnecessary, he having certified to the owner that the contractor had performed his contract, such refusal is unreasonable, and dispenses with the necessity on the part of the material man to secure such certificate, as required by his contract to enable him to recover from the contractor.

3. SAME—PERFORMANCE.

Where, under contracts by material men to furnish materials to contractors in accordance with the specifications of the architect, there is a general custom for material men to apply to the architect for the specifications when desired, a material man cannot excuse his delay in furnishing the material on the ground that the specifications were not furnished in time by the architect, it appearing that there was no delay on the part of the architect in furnishing the specifications when applied for by the material man.

4. SAME—BREACH—DAMAGES.

On failure by a material man to furnish the material within a reasonable time, thereby preventing the contractor from completing the building within the time required by his contract, the contractor may recover as damages the amount he is required to pay the owner of the building for the delay, though the material man was unaware of the time within which the contractor was required to complete the building.

**5. SAME—EVIDENCE—SUFFICIENCY.**

On the issue as to the amount of extra expense incurred by a building contractor, through default of a material man, the contractor claimed the extra expenses were occasioned by the facts that defective material had to be torn out, and that deliveries of the material were made piecemeal, so that the men could not work advantageously. The evidence showed that the contractor had a contract with a subcontractor for placing the material to be furnished and for other additional work for $550; that he was required to pay the subcontractor $2,200; that cabinet workers were employed by the subcontractor for 600 days, whereas, if the contract for the material had been properly performed, the material could have been placed in 120 or 130 days; and that the extra work included in the contract with the subcontractor required from 35 to 40 days. The major part of the time sheets relied on to show the number of days'· work performed failed to state the particular character of the work on which the men were employed, and some stated that the labor was performed on other work than that included in the contract with the subcontractor. *Held*, that the evidence was insufficient to authorize a recovery of the difference between the amount paid the subcontractor and the amount of the original contract with him.

Appeal from judgment on report of referee.

Action by Harvey Murdock against Louis R. Jones and the International Tile & Trim Company to foreclose a mechanic's lien. From a judgment entered on report of a referee, the International Tile & Trim Company appeals.    Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BART-LETT, and HATCH, JJ.

J. T. Marean, for appellant.
Charles Robinson Smith and Louis Dean Speir, for respondent.

CULLEN, J.   The plaintiff in September, 1889, entered into a contract with the defendant Jones, by which the former was to construct a dwelling house for a specified sum.   In December of the same year the plaintiff entered into a contract with the defendant the tile company, whereby the latter was to furnish the trim and cabinet work for the house, but not to set them in place, for the sum of $4,946. Shortly after the house was finished, or claimed to be finished, the plaintiff filed a mechanic's lien for the balance due him on his contract with the defendant Jones, and for certain extra work, and the defendant the tile company filed its lien for the unpaid balance claimed to be due it from the plaintiff.   Thereafter the plaintiff brought this action to enforce his lien.   In his complaint he alleged that the tile company had failed to complete its contract with him,. by delay in time of performance, and by furnishing him improper and defective materials; that by such breach plaintiff had been damaged in a sum greater than the balance due the tile company on the contract, and, as against it, prayed that the lien filed by the tile company be discharged.   The tile company answered, asserting the validity of its lien.   The defendant Jones answered, denying that the plaintiff had completed his contract, and also counterclaiming for damages for delay and defective work.   The action was tried before a referee, who found that the plaintiff had substantially performed

his contract for the construction of the house, but allowed the defendant Jones, as a set-off, $1,390.27 damages for the delay in the performance of the contract. As between plaintiff and the tile company, the referee decided that the tile company substantially performed its contract, but that it delayed in such performance, and prevented the plaintiff from performing in time his contract with Jones. He therefore allowed the plaintiff, as a set-off against the tile company, the same sum allowed Jones against the plaintiff. The referee further found that some of the material furnished by the tile company was defective, which necessitated its being taken out and the work being done over, and also that the tile company did not make proper deliveries of the material, and that on account of such course the plaintiff's workmen were compelled to lose time in setting the woodwork up. For this last breach the referee allowed the sum of $1,650. The aggregate of these two allowances to the plaintiff exceeded the balance due the tile company on the contract. No judgment was given for the deficiency, but the tile company was adjudged to have no lien on the property, and the notice of lien filed by it was ordered to be canceled. From this judgment the tile company has appealed.

The notice of appeal taken by the tile company is directed only to the plaintiff, and was not served on the defendant Jones. As the defendant Jones, the owner of the property affected by the lien, is not a party to this appeal, we do not see how it is possible to reverse the judgment, in so far as it voids the lien filed by the tile company. By neglecting to make him a party to this appeal, it has lost its right to reinstate the lien, even if the judgment below is erroneous. Mechanics' Lien Law, § 15, provides that in any action brought to foreclose the lien, if the party failed for any reason to establish the lien, he may nevertheless recover therein, on the contract, such sum as may be due him. As the question of the liability of the plaintiff to the tile company, on the contract between them, could be determined, and was actually litigated, on the trial, the judgment herein would conclude the tile company in any subsequent action. We think, therefore, it has the right to prosecute this appeal and have the judgment reviewed, even though it cannot regain its lien.

The first point to be disposed of is the plaintiff's claim that the appellant failed to obtain a certificate from the architect as to the completion of its work, which was required by the contract. The referee has found that the appellant did substantially perform its contract. The architect, upon the completion of the building, gave a certificate to the owner that the plaintiff had performed his contract for the construction of the house. It is true, as claimed by the plaintiff, that this certificate did not necessarily imply a certification that the appellant had fulfilled its contract with the plaintiff; for non constat but that the plaintiff himself furnished the trim necessary for the construction of the house. But when the appellant applied to the architect for its certificate the architect declined, upon the ground that he had given a certificate to the owner, and that was

all that was requisite. This was an unreasonable refusal on the part of the architect, if, as a matter of fact, the appellant had performed its contract, and this the referee has found. Such refusal dispensed with the necessity of producing a certificate.

The evidence amply justified the finding of the referee that the appellant was guilty of gross delay in the performance of its contract. We do not assent to the plaintiff's claim that the appellant took the risk of any delay on the part of the architect in failing to furnish detailed plans or drawings. We think, under the contract, the performance of this duty by the architect was a condition precedent to any duty on the part of the appellant; but the evidence of the architect as to the general practice in the business was that, whenever a party wished or required detailed drawings, he applied to the architect. This evidence as to the custom is uncontradicted, and it also appears from the appellant's evidence that whenever it needed drawings it sent to the architect for them. While many of these drawings were not furnished until a time long after that at which appellant should have finished its contract, it does not appear, nor is there any claim, that the architect delayed in furnishing the drawings when they were applied for. The delay in performing the contract seems, therefore, to have been solely the fault of the appellant.

The appellant claims that, conceding it was in default in respect to time of performance, an improper rule of damages was held against it. We think not. Though the evidence does not show that the defendant was informed of the time within which the plaintiff, under his contract with Jones, was bound to construct the house, still it abundantly appears that he knew that the plaintiff had a contract for such construction. He also knew that the materials were for this particular house; that they were not such as could be supplied in the market, but had to be got out, fashioned, and formed in accordance with special designs. Under this state of facts the case falls directly within the rule of Booth v. Mill Co., 60 N. Y. 487, and the appellant was bound to indemnify the plaintiff against any damage he might suffer under his contract with Jones. There is a further answer to this claim of the appellant: It knew that its delay in furnishing the material contracted for would necessarily delay the completion of the house, and had there been no contract between plaintiff and Jones, but the plaintiff had been the owner of the property, we cannot see why the rule of damage adopted by the referee would not have been entirely fair and applicable.

As to the second item of set-off allowed the plaintiff as against the appellant, we are of opinion that the amount allowed by the referee was not justified by the evidence. It appears that plaintiff had made a contract with a cabinet worker to set up the trim and woodwork, and also construct fences and coal bins, for the sum of $550. The plaintiff, as a matter of fact, paid the cabinet worker $2,200. The plaintiff claims that this increased expense was occasioned by the fact that defective material furnished by the appellant had to be torn out of the house, and new material set up, and also that the

deliveries by the appellant were made piecemeal, so that the men could not work advantageously. No claim is made for new material substituted for that which was defective. All defective material seems to have been replaced by the appellant. Hence the sole claim is based on extra work. That some of the material originally furnished by the appellant was defective is unquestionable, and therefore the plaintiff should doubtless have some allowance for extra work occasioned thereby. The proof, however, to establish that the whole of this great increase of cost was occasioned by defects in the defendant's material, is very unsatisfactory. In the first place, the difference between the contract price with the cabinet worker and the amount actually paid could not be the measure of loss, because the latter amount included extra work not provided for by the contract. The evidence to sustain the plaintiff's claim in this respect was substantially that cabinet workers were employed for 600 days; that ordinarily, where proper material was furnished, the trim furnished by the appellant could have been set up in 120 or 130 days; and that from 35 to 40 days were required to set up coal bins and fences which were not included in the appellant's contract, on which it is sought to charge the defendant with the difference between the time actually taken and the time which should have been taken to do the work according to these estimates. We doubt if this evidence was competent to establish any such fact. Whatever value it may have had was destroyed by the time sheets introduced to support it. As to the major part of the work, the time sheets fail to show on what particular character of work the men were employed. Where they do indicate the character of the work, they show that on many occasions the work had no connection with the appellant's contract. Thus work is mentioned on the dumbwaiter, on floors, on stairs, and other parts of the building. The plaintiff's witnesses were also allowed to testify generally that the extra work occasioned by the improper deliveries and defective material amounted to 400 or 500 days, of which they thought that two-thirds was occasioned in tearing down and replacing defective material, and one-third by having to temporarily abandon the work for lack of material on hand. On cross-examination, being asked to specify the particular pieces of work replaced, and the time spent in replacing them, the witnesses could not give instances amounting to a quarter of the extra work testified to. Such evidence is wholly unreliable, and, especially in this instance, should have been given little or no weight. Of course, it is of a character that, from the nature of things, it was impossible for the appellant to controvert. If the plaintiff intended to charge the appellant with this great sum, amounting to one-third the contract, common fairness dictates that he should point out with reasonable definiteness the particular pieces of bad work which were replaced, and the time spent in replacing them, so that the defendant might determine whether these charges were reasonable, and, if unreasonable, resist them. At most, in our judgment, the extra work of this character established by the evidence, and of which details are given, amounts to 105 days. The allowance for this, at $3.25

per day and 10 per cent. for the contractor, would amount only to $375.37, instead of $1,650, allowed by the referee.

The judgment appealed from should be reversed, except so far as it cancels the lien of the appellant, and a new trial ordered on the issues between the plaintiff and the appellant; costs to abide event. All concur.