ELMORE & WOMBLE *v.* THAGGARD, and *vice versa.*

UNITED STATES FIDELITY & GUARANTY COMPANY

*v.* THAGGARD, and *vice versa.*

1. A motion for a new trial was duly made and filed, and the court then passed an order providing that the movant have "until the hearing, whenever it may be, to prepare and present for approval a brief of the evidence in said case, and the presiding judge may enter his approval thereon at any time, either in term or vacation, and if the hearing of the motion shall be in vacation and the brief of evidence has not been filed in the clerk's office before the day of the hearing, said brief of evidence may be filed in the clerk's office at any time within ten days after the motion is heard and determined." The motion was heard in vacation, under appropriate orders, and at the hearing the movant presented a brief of the evidence, which was approved as true and correct, and ordered filed. Four days afterwards the approved brief was filed in the clerk's office of the proper court. *Held,* that a motion to dismiss the

motion for a new trial, on the ground that "no brief of the evidence was filed with the motion for new trial," was properly overruled. *Malsby* v. *Young*, 104 *Ga.* 205 (30 S. E. 854); *Walker* v. *Neil*, 117 *Ga.* 733 (45 S. E. 387).

2. The refusal to dismiss the motion for a new trial on the other grounds contained in the motion to dismiss was in accordance with the ruling in the cases of *Lewis* v. *Equitable Mortgage Co.*, 94 *Ga.* 572 (21 S. E. 224), and *Mann* v. *Tallapoosa St. Ry. Co.*, 99 *Ga.* 117 (24 S. E. 871).

3. The plaintiff having brought suit, on a building contract and a bond to secure performance on the part of the contractors, to recover damages and the expense incurred in furnishing material and labor necessary to the completion of the building after the termination of the employment of the contractors on account of their failure to perform their part of the agreement, the petition was open to attack by general demurrer, on the ground that no cause of action was stated, inasmuch as it did not show that the plaintiff's claims for expenses incurred and damages sustained through the default of the contractors had been audited and certified by the architect, or any reason why such a certificate was not obtained, the contract expressly providing that "The expense incurred by the owner as herein provided, either for furnishing materials or for furnishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties." The certificate provided for in the paragraph quoted, or a valid reason for not obtaining the same, was a condition precedent to the plaintiff's right to recover.

Argued November 26, 1907.— Decided May 19, 1908.

Action on contract. Before Judge Rawlings. Tattnall superior court. January 14, 1907.

The suit was by N. A. Thaggard against Elmore & Womble as principals and the United States Fidelity & Guaranty Company as surety, and was based upon a building contract and a bond to secure the faithful performance of the contract. General and special demurrers to the petition were overruled, the trial resulted in a verdict against the defendants, and a new trial was refused. The rulings stated are complained of in a bill of exceptions filed by Elmore & Womble, and in a separate bill of exceptions filed by the surety company. The plaintiff filed cross-bills of exceptions assigning as error the overruling of motions to dismiss the motions for a new trial.

The contract (a copy of which was attached to the plaintiff's petition) was for the erection of a house for the plaintiff by Elmore & Womble within a specified time. The petition alleged, that Elmore & Womble had failed to carry out the contract, that they had failed and refused to supply a sufficiency of workmen, and had

failed in the performance of all the agreements contained in the contract, and that this was sufficient ground for the owner to terminate the employment of the contractors and to employ others to finish the work and to supply material therefor; that on July 12, 1905, the architect for the building certified to the above facts as required in the contract, and the plaintiff notified Elmore & Womble that on July 21, 1905, he would take charge of the premises, tools, materials, and appliances, for the purpose of completing the work. There were also allegations as to compliance with provisions of the contract as to notice to the surety, and as to the surety's failure to undertake the completion of the work. It appeared from the petition that at the time it was filed (July 29, 1905) the building was still unfinished. It was alleged that the plaintiff had fully complied with all the terms, stipulations, and conditions to be performed by him. He sought to recover the full amount of the bond,—$7,500, which sum was to cover unpaid bills for material and labor, the estimated cost of completing the building, and $1,800 as liquidated damages provided for in the contract. By an amendment filed April 9, 1906, the plaintiff alleged, that since the filing of the suit he had completed the building in accordance with the contract, and that he had incurred certain expense for material and labor in the completion of the work, and certain damage, the items of which were set out, amounting to a specified sum; and he sued for the loss and damage sustained, striking the original allegations of the petition as to the amount sued for.

Article 5 of the contract was as follows: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after . . . days' written notice to the contractor, to provide any such labor or materials and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for said work and to enter the premises and take possession, for the purpose of com-

pleting the work comprehended under this contract, of all tools, materials, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the material therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing this work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed said unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for furnishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties."

*Alexander & Edwards,* for Elmore & Womble.

*Hitch & Denmark,* for United States Fidelity & Guaranty Co.

*Travis & Travis* and *Hines & Jordan,* for Thaggard.

BECK, J. These two cases were tried together in the court below, and argued together in this court. The rulings upon the questions raised in the cross-bill of exceptions, by assignments of error upon the court's refusal to dismiss the motion for a new trial, and our decision upon the controlling question raised by an assignment of error in the main bill in each case, dispose of both cases, and separate decisions are unnecessary.

1, 2. The court below did not err in refusing to dismiss the motion for a new trial. The rulings in the first and second headnotes require no discussion. The principle there laid down is amply supported by authority to be found in decisions of this court.

3. Many questions were raised by the assignments of error contained in the main bills of exceptions and in the cross-bills, but the determination of a single point, made by the exception to the overruling of the defendant's general demurrer, is controlling in each case, and a discussion of other questions involved is altogether unnecessary. Nor would an elaborate discussion of the decisive question be profitable here, as it has been discussed, in the identical form presented by this record, by several courts, in lengthy and able decisions, and the conclusion reached in each of them is

the same. We assume, as a matter of course, that it is unnecessary to argue, or to cite authorities to show, that the plaintiff's right to recover depends upon his right at the commencement of the suit; and the non-existence of a cause of action when a suit is begun is a fatal defect which can not be cured, even by the accrual of a cause of action pending the suit. ."The general rule is that there can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover." *Deas* v. *Sammons,* 126 *Ga.* 431 (55 S. E. 170), and cit. Under the facts of this case, as they appear in the plaintiff's original declaration and the amendments, no cause of action 'had accrued at the time the suit was filed. The case of American Bonding & Trust Company *v.* Gibson County, 145 Fed. 871, is precisely in point. That was an action brought by Gibson County, Tennessee, upon a building contract, against George C. Winston as principal and the American Bonding & Trust Company as surety. The contract price of the 'building was to be paid in six instalments as the work progressed, and a final payment of $9,581 when the work was completed. The evidence tended to show that the contractors did all of the work except 'that covered by the final payment, and that they had been paid the instalments substantially as they were earned. There was evidence of delay and neglect in the later stages, and, on August 2, 1900, the architect, in accordance with article 5 of the contract (which was in the identical language of article 5 of the contract in the case at bar), certified that the contractors were refusing and neglecting to prosecute the work as they were bound to do, and that their breach of the agreement was such as to terminate their employment and to authorize the county to enter upon the premises and employ other persons to complete the work. Upon due notice the county took possession and caused the building to be finished as provided by the agreement. Suit was brought to recover the cost of so completing the building, in excess of amount of the final payment due under the contract, and damages arising from the default of the contractors. The suit was brought after the building was completed by the owner, but before his claim had been audited and certified by the architect. In the decision in that case it is said: "It was . . open to the plaintiff to amend its declaration, if such was the fact, by averring

45

that before suit commenced it had caused its expenses and damages growing out of the default of the contractors to be audited and certified as provided by the contract, or that the architect had illegally refused to so audit and certify, though requested so to do. . . The plain meainng of that part of article 5 of the agreement applicable to the facts of this case was that the contractors and their surety should only be liable for the expense of finishing the building, and for the damages provided for delay due to the default of the contractor, when such cost and damages over and above the contract price should be audited and certified by the architect. Until that was done, no right of action under the fifth clause of the contract accrued, and this construction of the contract was. the law of the case from which the court below was not authorized to depart. Plaintiff's suit was prematurely brought, and no amendment declaring upon a cause of action which did not exist when the suit was commenced would cure such a defect. If no cause of action existed when the suit was started, there was nothing to amend, and when this fact appeared, and objection was made, the suit should have been dismissed without prejudice to an action · upon the cause of action which did accrue when the architect audited the claim. It was not a case of a cause of action defectively stated. Such a defect is amendable. Neither was it a case of a new cause of action brought in by amendment, which existed when the suit was brought. It was an effort to declare and recover upon a cause of action which arose pending the suit. . . That plaintiff had no right of action outside of the contract, under the facts · of this case, we expressly decided upon the former hearing." In the case of De Mattos *v.* Jordan, decided by the Supreme Court of Washington, 20 Wash. 315 (55 Pac. 118), it was held, that for recovery on the bond of a building contractor for expenses of the owner in completing the building, which the contract provides shall be audited and certified by the architect, a certificate given after commencement of the action is too late; and that sureties on a building contractor's bond, by denying any liability on the bond, are not estopped to allege non-compliance of the owner with the provision of the contract requiring that, in case he finishes the building, his expenses therefor must be audited and certified by the architect. With reference to the necessity for obtaining the architect's certificate before the commencement of suit, the court

said: "But this came too late, for it was necessary to obtain it in the first instance, under the contract, as a basis for the claim against the sureties." The same principles were laid down in the case of Tally *v.* Parsons, 131 Cal. 516 (63 Pac. 833). There the contract under construction provided that the expense incurred by the owner, either for furnishing materials or finishing the work, and any damage incurred through the default of the contractor, should be audited and certified by the architect, whose certificate was to be conclusive between the parties. It was said, in the case last referred to: "It was a part of the terms and conditions of his [the builder's] contract that if the owner, by default of the contractor, should be compelled to furnish labor and materials and finish the building, any damage incurred through such default should be audited and certified by the architects. This was a condition precedent, and was inserted for the protection of the contractor and the sureties." In the case of International Cement Co. *v.* Beifeld, decided by the Supreme Court of Illinois, 173 Ill. 179 (50 N. E. 716), where the contract involved provided that on failure of the contractor to do any of the work required, the owner should, upon the architect's certificate of such neglect, be at liberty to terminate the employment and complete the work himself, his expenses to be audited by the architect, whose certificate should be conclusive, and where the owner was seeking to recover the expenses incurred by him in finishing the work, over and above the unpaid balance due, it was held, that the action could not be maintained without the architect's certificate, unless sufficient excuse for failure to present the same be shown; and that a statement of claim based wholly on the contract, with a bill of particulars, in which the contract was filed as a part, was an attempt to recover under the contract, and not for damages independently of the contract, so as to excuse the failure to furnish the architect's certificate as required by the contract. And in the course of the decision it was said: "Counsel for appellee, however, take the position that Armstrong abandoned the contract, and that, by reason of such abandonment, the appellee was entitled to damages for a breach of the contract, without producing the architect's certificate. In other words, it is contended that the claim here made is not upon the contract, but is for damages independently of the contract. This contention, however, can not be maintained." See

also Scott *v.* Texas Construction Co., (Tex.), 55 S. W. 37; Pierce *v.*
Whiting, 63 Cal. 543; Carter *v.* Mulrein, 82 Cal. 169 (22 Pac.
1086, 16 Am. St. R. 98); Michaelis *v.* Wolf, 136 Ill. 68 (26 N.
E. 384); Gilmore *v.* Courtney, 158 Ill. 432 (41 N. E. 1023).

Counsel for defendant in error rely upon the case of Fuller Co.
*v.* Doyle, 87 Fed. 687, and the case of *Adams* v. *Haigler,* 123 *Ga.*
659 (51 S. E. 638), but the case of Fuller Co. *v.* Doyle
is distinguished, in the case of the American Bonding &
Trust Co. *v.* Gibson County, 127 Fed. Rep. 673, from a case in-
volving a question like that under consideration; and the allega-
tions of the plaintiff's petition in the case of *Adams* v. *Haigler,*
supra, were materially different from those in the instant case.
The provisions of paragraph 7 of the contract sued on in the
*Adams* case were similar to those of article 5 of the contract in
the present case, and the last sentence of that paragraph was as fol-
lows: "The expense incurred by the owner as herein provided, either
for furnishing materials or furnishing the work, or both, and any
damage incurred through such default, shall be audited and certified
by the architect, whose certificate thereof shall be conclusive upon
the parties hereto." And it was said, in the opinion in the *Adams*
case, that "The condition of affairs contemplated by the 7th para-
graph of the petition does not seem to have arisen, that is, where
the plaintiff would be compelled to secure the services of some one
not connected with the original contract to complete the work. If
the allegations of the petition were that both Frey and Haigler had
entirely abandoned the contract and failed to perform its conditions,
and that the plaintiff had made a new and independent agree-
ment with Haigler to complete the work without reference to the
old contract, an entirely different question would have been raised;
and it is probable that the right of plaintiff to recover would have
been dependent upon his compliance, either literally or in sub-
stance, with the stipulations of paragraph 7."

The decisions which we have quoted and cited above are strong
and convincing. They leave nothing to be said further touching
the questions with which they deal. An elaboration of the reason-
ing and argument in those cases would be superfluous. Without
taking a course directly against this strong current of authority,
we can not do otherwise than hold that the defendants' general de-
murrer to the petition should have been sustained, because the pe-

tition fails to show that the plaintiff's claim had been audited and certified by the architects, or that such certificate had been wrongfully denied upon request before the suit was filed.

The court below having erroneously refused to sustain the general demurrer to the declaration, all that took place subsequently on the trial was nugatory; and it is unnecessary to pass upon assignments of error on rulings of the court in the subsequent stages of the case.

*On both of the main bills of exceptions the judgments are reversed. On both cross-bills the judgments are affirmed. All the Justices concur.*