# LONG v. AMERICAN SURETY COMPANY.

### (137 N. W. 41.)

**Principal and surety — faithful performance of subcontractor — breach — contract — measure of damages.**

1. In an action upon a surety bond given to a contractor to secure the faithful performance of a subcontract, and where knowledge of the principal contract can be imputed to the surety, the measure of damages may be the difference between the price agreed to be paid to the principal contractor and the price agreed by him to be paid to the subcontractor, or the profits of the contract. Such surety company may also be held liable for any cost or damage or charge which he may incur by reason of the breach of his own contract with his principal which is brought about by the default of the subcontractor. Such liability, however, must be definitely proved, and a mere possible and problematical liability cannot be made the basis of a recovery.

**Drains — ditches — subcontractor — contract — bond — breach — damages.**

2. Where a contract was made with a subcontractor for the construction of a portion of the drainage ditch, and such contractor default, and after the default and the failure of the principal contractor to perform his contract with a board of drainage commissioners, on account thereof, the board of commissioners, after such default and before the trial of an action brought by the contractor on the bond of his subcontractor, entered upon and completed the ditch, and there was no evidence that the cost of completion to them exceeded the price agreed by them to be paid to the principal contractor, no damages can be recovered by the said contractor against the surety company on account of a possible liability on his part to the drainage commissioners, and the possibility that the cost of completion by them was greater than the contract price.

### On Rehearing.

**Principal and surety — breach of bond — release of surety.**

3. Where, in such case, the bond provides that a portion of the contract price shall be retained by the principal contractor until the whole of the work is completed, a failure to retain such portion will release the surety.

**Principal and surety — bond — default — notice.**

4. Where the bond requires notice "of any default in any of the terms, covenants, and conditions of the contract" to be given to the surety company within a specified time, an abandonment of the work before the time of completion will constitute such a default, and notice must be given thereof and within the time prescribed.

**Principal and surety — surety company — terms and conditions of bond.**

5. Where a surety company is paid a premium for issuing its bond, it will
usually be treated rather as an insurer than according to the strict law of
suretyship. This rule, however, does not exempt the beneficiary from living
up to the terms of his own agreement, and the provisions of such bond are
not to be construed strictly for or against either party, but reasonably as to
both.

Opinion filed April 24, 1912.   On rehearing, June 29, 1912.

Appeal from the District Court of Sargent county; *Allen,* J.

Action upon a surety bond to recover damages caused by the alleged
breach of subcontract to perform work. Verdict and judgment for
plaintiff. Defendant appeals.

Reversed.

This is an action on a bond and against the defendant surety company
to recover damages for the breach of a subcontract to excavate a portion
of a drainage ditch. The principal contract was made on October 3,
1906, between the plaintiff, Long, and the tri-county drainage board
of Ransom, Sargent, and Richland counties, and an extension thereof
was made on April 6, 1908. The subcontract for the faithful per-
formance of which this bond was given, was made between Long and
the subcontractor, Chas. C. Gentry, on May 12, 1908, and the bond
sued upon was executed by the defendant on August 6, 1908, Gentry has
defaulted under his contract, and the plaintiff sues on the bond to re-
cover damages for his loss.

The principal contract of October 3, 1906, fixed the price to be paid
Long by the commissioners, at 17 cents per cubic yard. The subcon-
tract of May 12, 1908, fixed the price to be paid Gentry by Long at
13½ cents per cubic yard. The so-called extension agreement of April
6, 1908, reduced the price to be paid Long from 17 to 15 cents per
cubic yard, but provided "that if the said C. A. Long shall comply
with all the conditions herein contained, and within the times herein
mentioned, time being declared as the essence of this contract, the par-
ties of the first part agree to pay to C. A. Long, as a bonus, an addi-
tional 1½ cents per cubic yard for contract excavation upon completion
of said drain." The extension agreement provided that the drain should

be completed by January 1, 1909, and the same provision was contained in the subcontract between Long and Gentry. Both the principal contract and the subcontract contained the provision that "if the party of the second part fails to proceed with said work with reasonable diligence, the said party of the first part may enter upon the work and complete the same, holding said party of the second part liable for all costs and expenses in finishing said ditch, over and above the amount of the contract price hereinbefore referred to," while the extension agreement also contained the provision that "in the event the conditions herein are not complied with in the manner herein specified, and within the times herein specified, then, and in that event, this extension agreement and the original contract are declared forfeited and determined, and all rights to continue work under said original contract and this extension are ended." There is some question as to the validity of this so-called extension agreement, except in so far as its extension of time to January 1, 1909, was concerned. The obligation of the bond was that the principal should "faithfully perform said contract on his part according to the terms, covenants, and conditions thereof," and the contract referred to was the contract of May 12, 1908, between Long and said Gentry, and a copy of both the contract between Long and Gentry and the principal contract between Long and the drainage board, of October 3, 1906, was attached to the bond. There were also provisions in the bond "that, in the event of any default on the part of the principal in the performance of any of the terms, covenants, and conditions of said contract, written notice thereof, with a verified statement of the particular facts showing such default and the date thereof, shall within fifteen days after such default be delivered to the surety at its office in the city of Minneapolis; and in case of any such default, all moneys which, but for such default, would be due, or would thereafter become due to the principal, shall be held by the obligee and by him applied for indemnification of the surety. . . . The obligee shall retain not less than 15 per cent of the value of all work performed and materials furnished in the performance of such contract, until the complete performance by said principal of all the terms, covenants, and conditions thereof on said principal's part to be performed."

The defense of the surety company was that the plaintiff had failed and neglected to make payments to said Gentry as provided for in his

contract with him, and, having violated his contract in that behalf, could not insist upon its performance; that the plaintiff, after the default, had not entered upon and completed the work, and therefore could not recover any damages based thereon; that the plaintiff had failed to notify the defendant within fifteen days after the default; that the plaintiff had hindered and delayed Gentry in the performance of his work; that the plaintiff did not furnish Gentry with proper plans and profiles, and, from time to time, required Gentry to make alterations in the work not provided for in the contract. There was also a claim that the defendant made and executed the bond sued upon, relying upon the representations in the contract between the plaintiff and Gentry, and with the understanding that the contract to perform the work described in said contract had been made and was then existing by and between said plaintiff and the drainage commissioners, and that the terms and conditions of the contract between the drainage commissioners and the plaintiff had been adopted to apply to the performance of the work provided for in the contract between the plaintiff and Gentry; with the exception, however, that the time for the ultimate performance had been extended until January 1, 1909; that the contract between the board and the plaintiff had, without the knowledge or consent of the defendant, been modified to the extent of extending the time of the performance to January 1, 1909, and the price agreed to be paid to the said Long was changed from 17 cents per cubic yard to $15\frac{1}{2}$ cents per yard, as a condition for said extension, said new contract being unknown to the defendant, and the defendant claiming that at the time it made and executed the bond it believed that the only contract for the performance of said bond was the original contract between the plaintiff and the board and the subcontract between the said plaintiff and Gentry; that notice and knowledge of said change was wilfully withheld from the defendant by plaintiff for the purpose of inducing him to make and deliver its bond, and that if the defendant had known of the change it would not have executed the bond. A recoupment was also pleaded on account of money alleged to be due and owing on account of the work from Long to Gentry. A verdict was rendered in favor of the plaintiff for $1,392.49, and interest at 7 per cent from January 1, 1909, and from a judgment based upon this verdict this appeal is taken. Prior to the entry of a judgment, a motion for a

judgment in favor of the defendant, and notwithstanding the verdict, was made and denied, as well as a motion for a new trial in the alternative. Prior to the verdict, also, the ordinary motions to dismiss and for a directed verdict was made and denied.

*Wolfe & Schneller* and *Kerr & Fowler,* for appellant.

When a contractor abandons a contract absolutely, he then and there commits a serious default,—such a default as puts the contract in jeopardy and imperils his surety. State ex rel. Broatch v. Moores, 52 Neb. 770, 73 N. W. 299; Burrill v. Crossman, 16 C. C. A. 381, 35 U. S. App. 608, 69 Fed. 752; 1600 Tons of Nitrate of Soda v. McLeod, 10 C. C. A. 115, 15 U. S. App. 369, 61 Fed. 851; Watson v. De Witt County, 19 Tex. Civ. App. 150, 46 S. W. 1061.

Written notice of any default is a condition precedent to recovery from the surety on the bond, and failure so to give notice entitled the surety to a dismissal of the suit against it, or a directed verdict in its favor. National Surety Co. v. Long, 60 C. C. A. 623, 125 Fed. 887; California Sav. Bank v. American Surety Co. 82 Fed. 866, 87 Fed. 118; United States Fidelity & G. Co. v. Rice, 78 C. C. A. 164, 148 Fed. 206; George A. Hormel v. American Bonding Co. 112 Minn. 288, 33 L.R.A.(N.S.) 513, 128 N. W. 12; Van Buren County v. American Surety Co. 137 Iowa, 490, 126 Am. St. Rep. 290, 115 N. W. 241; Frost, Guaranty Ins. 2d ed. pp. 535–540; Rice v. Fidelity & D. Co. 43 C. C. A. 270, 103 Fed. 427.

The provision of the contract giving Long the right to enter and complete the work cannot be ignored, as it was by the plaintiff in his offer of proof and in his actual proof. It secures a valuable right to the surety on Gentry's bond, of which it should not be deprived. American Surety Co. v. Woods, 45 C. C. A. 282, 105 Fed. 741; Hunt v. Oregon P. R. Co. 1 L.R.A. 842, 36 Fed. 481; Reichenbach v. Sage, 13 Wash. 364, 52 Am. St. Rep. 51, 43 Pac. 354; Texas & St. L. R. Co. v. Rush, 19 Fed. 239; Dermott v. Jones, 2 Wall. 1, 17 L. ed. 762; Public Schools v. Bennett, 27 N. J. L. 515, 72 Am. Dec. 373; 3 Am. & Eng. Enc. Law, § 900, and note; Warren v. Stoddart, 105 U. S. 224, 26 L. ed. 1117; Cunningham Iron Co. v. Warren Mfg. Co. 80 Fed. 878; Watson v. Kirby, 112 Ala. 436, 20 So. 624; 13 Cyc. 72, 73.

Plaintiff must allege in his complaint, and prove upon the trial,

the performance by himself of all conditions precedent to a recovery, or waiver thereof, or excuse for their nonperformance. And any material breach of such conditions serve to relieve the defendant surety company from liability under its bond. United States v. American Bonding & T. Co. 32 C. C. A. 420, 61 U. S. App. 584, 89 Fed. 925; Morgan County v. Branham, 57 Fed. 179; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; First Nat. Bank v. Fidelity & D. Co. 45 Ala. 335, 5 L.R.A.(N.S.) 418, 117 Am. St. Rep. 418, 40 So. 415, 8 Ann. Cas. 241; United States Fidelity & G. Co. v. Thaggard, 130 Ga. 701, 61 S. E. 726; Cowdery v. Hahn, 105 Wis. 455, 76 Am. St. Rep. 921, 81 N. W. 882; Backus v. Archer, 109 Mich. 666, 67 N. W. 913; Shelton v. American Surety Co. 66 C. C. A. 94, 131 Fed. 210; Welch v. Hubschmitt Bldg. & Woodworking Co. 61 N. J. L. 57, 38 Atl. 824; National Surety Co. v. Long, 79 Ark. 543, 96 S. W. 745, and on second appeal, 85 Ark. 158, 107 S. W. 384; Frost, Guaranty Ins. 2d ed. §§ 199–203–214; 1 Brandt, Suretyship & Guaranty, 3d ed. §§ 439, 440; 2 Brandt, Suretyship & Guaranty, 3d ed. §§ 748–755; 4 Enc. Pl. & Pr. p. 643; International Cement Co. v. Beifeld (Ill.), 50 N. E. 716; American Bonding & T. Co. v. Gibson County, 76 C. C. A. 155, 145 Fed. 871, 7 Ann. Cas. 522, 62 C. C. A. 397, 127 Fed. 671.

*Purcell & Divet, George W. Freerks,* and *P. L. Keating,* for respondent.

A contract to be performed *in futuro* is not to be considered as broken and the obligor thereunder in default until its time limit has passed; Stanford v. McGill, 6 N. D. 536, 38 L.R.A. 760, 72 N. W. 938.

Plaintiff, upon breach of the subcontract, Exhibit F, had the duty to minimize damages in any way reasonably within his power, but there was no time or opportunity for him to minimize damages, and any action on his part was neither available nor possible. Davis v. Bronson, 2 N. D. 300, 16 L.R.A. 655, 33 Am. St. Rep. 791, 50 N. W. 836; Danforth v. Walker, 37 Vt. 239, 40 Vt. 257; Moline Scale Co. v. Beed, 52 Iowa, 307, 35 Am. Rep. 272, 3 N. W. 96; Nebraska v. Nebraska City Hydraulic Gaslight & Coke Co. 9 Neb. 339, 2 N. W. 870; Clark v. Marsiglia, 1 Denio, 317, 43 Am. Dec. 670; Butler v. Butler, 77 N. Y. 472, 33 Am. Rep. 648; Gibbons v. Bente, 51 Minn. 499, 22 L.R.A. 80, 53 N. W. 757; Stanford v. McGill, 6 N. D. 536,

23 N. D.—32.

38 L.R.A. 760, 72 N. W. 938; Southern Cotton Oil Co. v. Heflin, 39 C. C. A. 546, 99 Fed. 345; Peck v. Kansas City Metal Roofing & Corrugating Co. 96 Mo. App. 212, 70 S. W. 169.

BRUCE, J. (after stating the facts as above).   Although there are many assignments of error in this case, they nearly all revolve around one question of damages, and a determination of that question is conclusive of most of them.   The question of damages is presented by the defendant, and appellant's exception to the instruction of the court which peremptorily told the jury that the damages to be found by them if they found the issues for the plaintiff must be the sum of $1,392.49 and interest at 7 per cent per annum from January 1, 1909.   This instruction was evidently based upon the assumption that the plaintiff was entitled to recover the difference between the $13\frac{1}{2}$ cents which by the subcontract he had agreed to pay the subcontractor, Gentry, and the 17 cents which he was entitled to recover from the drainage board under the principal contract; and added to this, the court evidently allowed him to recover the sum of 35 cents per cubic yard for the estimated cost of the completion of the work, or 18 cents per cubic yard, the difference between the 17 cents provided for in the principal contract and the 35 cents per cubic yard which the witness, Baker, testified would be the cost of completing the work.   The defendant insists that, on account of the fact that Long did not enter and complete the work, he is entitled to no damages for the cost of completion.   He also insists, in the alternative, that even if the court should find that a personal entry and completion was not necessary to a recovery, the plaintiff cannot recover damages based on an assumed cost of completion which might be charged up to him by his principals, the drainage board, when it was within his power to positively prove the cost of such completion.   He insists that plaintiff's damages should, at any rate, be confined to the loss of the profits on the principal contract, *i. e.*, to the difference between the amount agreed to be paid to him by the drainage board and the amount he agreed to pay to his subcontractor, and that against this sum may be set off the 20 per cent on the 59,840 yards, at $13\frac{1}{2}$ cents per yard, removed by Gentry before the default, and which sum Long was entitled to withhold under the subcontract with Gentry until the completion of the work, and which the terms of

the bond required to be applied to the reduction of damages against the surety.

The rule is well established that where an obligator, under a collateral or subcontract, fails to perform his agreement within the stipulated time, knowing at the time that the obligee, depending upon such performance, must carry out his agreement with a third person within a certain time or be liable in damages therefor, and there is proof in the record that such obligee has been compelled to pay or account for such damages, such obligor will be liable to the obligee for the damages occurring through his default, as well as for the loss of the profits of the transaction.     Such damages are deemed to have been within the contemplation of the parties.     Shurter v. Butler, 43 Tex. Civ. App. 353, 93 S. W. 1084; Halstead Lumber Co. v. Sutton, 46 Kan. 192, 26 Pac. 444; Feland v. Berry, 130 Ky. 328, 113 S. W. 425; Sutton v. Wanamaker, 95 N. Y. Supp. 525; Illinois C. R. Co. v. Southern Seating & Cabinet Co. 104 Tenn. 568, 50 L.R.A. 729, 78 Am. St. Rep. 933, 58 S. W. 303; O. H. Perry Tie & Lumber Co. v. Reynolds, 100 Va. 264, 40 S. E. 919; Ledgerwood v. Bushnell, 128 Ill. App. 555; Murdock v. Jones, 3 App. Div. 221, 38 N. Y. Supp. 461; Modern Steel Structural Co. v. English Constr. Co. 129 Wis. 31, 108 N. W. 70. We are unable to find any authorities, however, and our attention has been called to none, which permit the recovery of damages based upon the cost of completion, where the obligee has not been compelled to pay the same, or actually incurred any liability therefor, and when the question as to whether he will incur them or not is a matter which is entirely problematical.     Much less have we been able to find authorities which allow their recovery when the cost of completion is merely estimated and there is a positive and definite method of ascertaining their amount, which has not been taken advantage of.     What the law aims at is to extend a fair measure of compensation for wrong sustained.     What it desires is certainty, and what it most abhors is speculation and oppression.     To allow the plaintiff to recover against the defendant for the $3\frac{1}{2}$ cents' loss of profits on the principal contract, and in addition thereto for the 35 cents a yard estimated cost of completion, when he did not complete, and, as far as the evidence shows, was not required to complete by his principal, the drainage board, and when the drainage board itself completed the work, and there is no

evidence whatever that the cost to it of such completion exceeded the 17 cents per cubic yard agreed to be paid to the plaintiff under the principal contract, would be to open the door to speculation and in many cases allow a plaintiff to recover a greater profit on the breach of a subcontract than he would have recovered if his subcontractor had performed the same. This the law will not, and should not, tolerate. American Surety Co. v. Woods, 45 C. C. A. 282, 105 Fed. 741; Hunt v. Oregon P. R. Co. 1 L.R.A. 842, 36 Fed. 481.

It is true that the witness Baker testified that the cost to complete the ditch would have been 35 cents a cubic yard. This, however, was merely an estimate, and as the ditch was completed in the summer of 1909, and several months before the trial, there was a positive means of arriving at the cost. There, too, was no proof of any claim or demand of damages on the part of the drainage board, or that the cost of completion by them exceeded the cost of the original contract price. It is true that the bond required the action to be commenced by February 1, 1909 and that, although there is a serious question as to the validity of this provision, there is also a serious question as to whether the bond company could assert its invalidity. The case, however, did not come up for trial until January 1, 1910, and on the trial at least two of the drainage commissioners were present as witnesses, as well as the secretary of the board. The plaintiff could easily have proved, upon the trial, this question of the cost of completion. Instead of doing so, he relies upon speculative estimates. This is not a definite way of proving damages, and such as the law approves. The provisions in the contracts, also, that if the obligor in the contracts did not proceed with the work with reasonable diligence, the obligees might enter and complete the same, "holding the said obligors liable for all costs and expenses in finishing said ditch, over and above the amount of the contract price," were evidence, and in many courts have been held to be conclusive evidence, of an understanding that entry and completion by someone and at some time was a prerequisite to a recovery of damages, and was the agreed basis of the estimate thereof. Ibid.

The measure of damages under the evidence in the case at bar should have been the loss of the profits of the transaction, or the difference between the price per yard agreed to be paid by the board to the principal contractor, Long, and the price agreed to be paid by Long to the

subcontractor, Gentry, and against this the defendant was entitled to an offset of 20 per cent on the yardage removed by Gentry, at 13½ cents a yard, which the bond required should be reserved for the protection of the surety. This credit largely exceeds the loss sustained by the plaintiff, even if we estimate his damages at 3½ cents a yard profit, as provided for under the principal contract, or at 2 cents a yard as contended for by the defendant. · We are of the opinion that the court erred not only in instructing the jury upon the question of damages, but also in denying the motion for a directed verdict, and in denying the motion for a judgment *non obstante veredicto.*

This view of the case makes it unnecessary for us to consider the other errors assigned by the appellant. The judgment of the district court is reversed and the case is remanded with directions to said court to enter judgment in favor of ·the defendant and against the plaintiff.

## On Rehearing.

BRUCE, J. It is urged on motion for rehearing that this case should be sent back for a retrial, rather than that a judgment *non obstante veredicto* should be ordered. This should be done if it appears, "from the nature of the case and the circumstances connected with it, that there is no reasonable probability that upon another trial the defects in, or objections to, the proof . . . may be remedied." Meehan v. Great Northern R. Co. 13 N. D. 432, 441, 101 N. W. 183; Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Welch v. Northern P. R. Co. 14 N. D. 25, 103 ·N. W. 396. As far as the question of damages is concerned, we think it possible that the missing proof might be furnished, and if this were the only question in the case we would be inclined to order a new trial.

In addition to the reasons given in the principal opinion for ordering a judgment *non obstante veredicto,* there are, however, two others which, in themselves, appear to us to be conclusive, and which were not mentioned before, as the question of damages appeared to us to be the main and controlling feature of the case. These are furnished by

the fact that plaintiff himself undoubtedly defaulted in the terms of his contract with the surety company to such an extent as to release them from their liability. The bond required that "notice of any default in the performance of any of the terms, covenants, and conditions of said contract shall be given to the surety company." Though it is true that there was no specific covenant, term, or condition to proceed with the work with reasonable diligence, there certainly was a covenant and agreement to complete the work by January 1st, and to enter upon and proceed with the work in some manner. It seems to be undisputed that early in the month of November the subcontractor, Gentry, abandoned the work. It is true that he left, in the ditch, a subcontractor, Twitchell, but it is also clear, from the evidence, that this subcontractor had no authority from Gentry to complete the remainder of the work, except the particular job on which he was working, and that, in order to induce him to do so, a separate and new contract would have had to be made between him and Long. There was, therefore, to all intents and purposes, an abandonment of the work by Gentry, which occurred early in November, and within fifteen days of which no notice was given to the surety company as required by the terms of the bond. It is true that the contract was not required to be completed until January 1st, but surely a complete abandonment may be considered as a refusal to complete by such date. A distinction, indeed, must be made between an abandonment as a basis of a suit for a breach of a contract, and abandonment which would require a notice to the surety company. It is well established that provisions in bonds for notice to the surety are inserted for the protection of both parties, and to give the surety an opportunity for self-protection. "The object of requiring notice to be given of a contractor's default which may involve loss," said the supreme court of Minnesota in the case of George A. Hormal & Co. v. American Bonding Co. 112 Minn. 288, 33 L.R.A. (N.S.) 513, 128 N. W. 12, "was to enable the surety company seasonably to take such practicable action as might prevent or minimize the loss by reason of the default; and it is not to be strictly construed for or against either party, but reasonably as to both. So construing it, it is clear that the provision for immediate notice does not require notice to be given instantly upon learning of the default, but that it should be given within a reasonable time in view of all the circumstan-

ces." In that case the bond required that "immediate" notice should be given, and the court construed that word to mean within a reasonable time. The rule certainly should operate both ways, and a bond which required a notice of default should certainly be construed to require a notice of an abandonment, even though the time for the completion of the contract had not expired.

The other reason for ordering a judgment *non obstante veredicto* is even more conclusive. It is that plaintiff absolutely failed to either allege or prove compliance on his part with the terms and conditions of the bond. The bond required that "the obligee (Long) shall retain not less than 15 per cent of the value of all work performed and materials furnished in the performance of such contract until the complete performance by said principal of all the terms, covenants, and conditions thereof on said principal's part to be performed, and that the obligee shall faithfully perform all the terms, covenants, and conditions of said contract on the part of the said obligee to be performed." There is no pretense in the evidence that Long retained this 15 per cent, but it is candidly admitted that he paid the subcontractor, Gentry, in full for what work he had performed, so that when Gentry abandoned the work he lost nothing except the profits which he might have made by the completion of the remainder. If plaintiff's evidence as to the cost of completion is to be relied upon, there would have been no profits, but rather a loss, so that there was every incentive for Gentry to abandon the work. If, on the other hand, the balance required by the contract and the bond had been retained by Long, he might have hesitated in abandoning the job for fear of losing the amounts so reserved. That such payments in violation of the conditions of a bond will release the surety is abundantly sustained by the authorities. Simonson v. Grant, 36 Minn. 439, 31 N. E. 861; George A. Hormal & Co. v. American Bonding Co. 112 Minn. 288, 33 L.R.A.(N.S.) 513, 128 N. W. 12; Brandt, Suretyship, § 245; Leeds v. Dunn, 10 N. Y. 469; Farmers' & M. Bank v. Evans, 4 Barb. 487; Miller v. Stewart, 9 Wheat. 681, 6 L. ed. 190; Morgan County v. Branham, 57 Fed. 179; United States use of Heise, B. & Co. v. American Bonding & T. Co. 32 C. C. A. 420, 61 U. S. App. 584, 89 Fed. 925; First Nat. Bank v. Fidelity & D. Co. 145 Ala. 335, 5 L.R.A.(N.S.) 418, 117 Am. St. Rep. 45, 40 So. 415, 8 Ann. Cas. 241; International Cement Co.

v. Beifield, 173 Ill. 179, 50 N. E. 716; United States Fidelity & G. Co. v. Thaggard, 130 Ga. 701, 61 S. E. 726; Cowdery v. Hahn, 105 Wis. 455, 76 Am. St. Rep. 921, 81 N. W. 882; Backus v. Archer, 109 Mich. 666, 67 N. W. 913; Shelton v. American Surety Co. 66 C. C. A. 94, 131 Fed. 210; Welch v. Hubschmitt Bldg. & Woodworking Co. 61 N. J. L. 57, 38 Atl. 824; National Surety Co. v. Long, 79 Ark. 523, 96 S. W. 745, 107 S. W. 384; Bragg·v. Shain, 49 Cal. 131; Taylor v. Jeter, 23 Mo. 244.

We are not unmindful of the fact that a paid surety or bonding company is treated rather as an insurer than as a surety. 32 Cyc. 303. Bank of Tarboro v. Fidelity & D. Co. 126 N. C. 320, 83 Am. St. Rep. 682, 35 S. E. 588, 128 N. C. 366, 83 Am. St. Rep. 682, 38 S. E. 908. This fact, however, does make it less obligatory on the part of the beneficiary to perform his part of the contract.

We have also examined the case of Stanford v. McGill, 6 N. D. 536, 38 L.R.A. 760, 72 N. W. 938, and § 6105 and § 6092 of the Revised Codes, which have been called to our attention by counsel for respondent. As far as the case of Stanford v. McGill is concerned, we make a distinction between a state of facts which would justify the immediate bringing of an action, and one which would make it obligatory to give a warning notice to the surety. The sections of the Code referred to appear to have been construed adversely to the contention of the respondent in the case of the McCormick Harvesting Mach. Co. v. Rae, 9 N. D. 482, 84 N. W. 346, and seem to be hardly applicable to the case at bar.

The petition for rehearing is denied, and the order heretofore entered will stand.