SHELTON v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Third Circuit. June 13, 1904.)

No. 32.

1. BUILDING CONTRACT—SURETIES—DEPARTURE—DISCHARGE.

Where a building contract provides that no payments shall become due until in each case the contractors shall have delivered to the owner a satisfactory release of liens against the premises, and the owner makes payments without requiring vouchers or releases, such payments constitute a substantial departure from the contract, to the prejudice of the contractor's surety, and discharge it from liability for a loss resulting therefrom.

Acheson, Circuit Judge, dissenting, in view of the special conditions of the surety bond and the facts.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 127 Fed. 736.

C. Berkeley Taylor, for plaintiff in error.
H. Gordon McCouch, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. But little, if anything, need be added to the opinion of the court below. 127 Fed. 736. It sufficiently states the material facts and correctly applies the law.

This court has this day decided, in the case of Zeigler v. Hallahan, 131 Fed. 205, that any material alteration of the principal contract, to which an undertaking of suretyship is attached, discharges the surety; and the question which this case presents is whether the same consequence results where the contract, though not avowedly altered, is materially departed from, by the principal parties to it, without the surety's knowledge, and to his prejudice. We think it does. He is entitled to rely upon its provisions as definitive of the extent of his responsibility, and the law which protects him against any express agreement to materially change them would be of dubious efficacy if the principal parties

¶ 1. See Principal and Surety, vol. 40, Cent. Dig. § 284.

were permitted to enhance his liability by simply disregarding them. Therefore "any dealings with the principal by the creditor which amount to a departure from the contract by which the surety is bound, and which by possibility might materially vary or enlarge the latter's liabilities without his consent, generally operate to discharge the surety. * * * There must be an assent of the surety to the creditor's dealing with the principal debtor otherwise than in the manner pointed out by the contract." Brandt on Suretyship & Guaranty (2d Ed.) § 397, and cases there cited. "In such cases he contracts in reliance upon the exact terms of his principal's undertaking, and has a right to suppose that no change will be made without his consent; and the courts have gone so far as to hold that any change will exonerate him, though it really rebound to his benefit." Guaranty Co. v. Pressed Brick Co., 191 U. S. 416–425, 24 Sup. Ct. 142, 48 L. Ed. 242. We need not pursue the argument. To do so would be but to repeat what already has been well said by the learned judge of the circuit court; and, in our opinion, this case is one which especially called for enforcement of the rule he applied to it. The contract by which the defendant in error was bound provided "that no payments shall become due until in each case the contractors * * * shall have delivered to the owner a satisfactory release of liens against the premises," and yet it is for a loss which resulted from the owner making payments without requiring the production of a release of liens that the plaintiff below sought to hold the contractors' surety liable.

The judgment is affirmed.

ACHESON, Circuit Judge (dissenting). I dissent from this judgment. The opinion of the court, which embodies the view of the majority, rests upon the assumption that the contract of suretyship was "materially departed from by the principal parties to it." Yet the opinion does not set forth the provisions of the surety bond, nor state the facts of the case. It refers to the opinion of the court below as stating the facts. But when we turn to that opinion, we discover that it is silent as to the terms of the bond, although that instrument—prepared by the surety company itself, and issued for pecuniary compensation paid to it—expresses the special conditions upon which the surety company took the risk of suretyship.

This action was brought by Frederick H. Shelton against the American Surety Company of New York upon the latter's bond, of which the following is a copy:

"Know all men by these presents, that we, Sherman Orem, trading as Sherman Orem & Company, of the City of Philadelphia, Pa. (hereinafter called the Principal), as the Principal, and the American Surety Company of New York (hereinafter called the Surety), as Surety, are held and firmly bound unto Frederick H. Shelton, of the City of Philadelphia, Pa. (hereinafter called the Obligee), in the sum of twenty-five hundred dollars ($2,500⁰⁰/₁₀₀) for the payment whereof said Principal binds himself, his heirs, executors, administrators, and assigns, and said Surety binds itself and its successors, firmly by these presents.

"Whereas, said Principal has entered into a written contract, dated July 3, 1902, with said Obligee, for the erection, construction, and completion of alterations and additions to the residence No. 228 S. 21st street, in the City of Philadelphia, a copy of which contract is hereto annexed:

"Now therefore, the condition of this obligation is such, that if the said

Principal shall faithfully perform said contract on his part, according to the terms, covenants and conditions thereof (except as hereinafter provided), then this obligation shall be void; otherwise to remain in full force and effect.

"Provided, however, and upon the following further express conditions:

"First—That in the event of any default on the part of the Principal, in the performance of any of the terms, covenants and conditions of said contract, written notice thereof, with a verified statement of the particular facts showing such default, and the date thereof, shall, within twenty days after the discovery of such default, be delivered to the Surety at its office in the City of Philadelphia.

"Second—That no suit, action or proceeding shall be brought or instituted against the Principal or Surety upon or by reason of any such default, after the first day of June, 1903.

"Third—That the Principal shall not, nor shall the Surety be liable for any damage resulting from an act of God; or from a mob, riot, civil commotion, or a public enemy; or from employees leaving the work being done in the performance of said contract, or so-called 'strikes' or labor difficulties, or from fire, lightning, tornado, or cyclone; or from injury to person or property resulting from accident or negligence of the performance of such contract; and that the Principal shall not, nor shall the Surety, be liable for the reconstruction or repair of any work or materials damaged or destroyed by said causes, or any of them.

"Fourth—That Obligee shall retain not less than fifteen per centum (15%) of the value of all work performed and materials furnished in the performance of such contract, until thirty days after the work herein contracted for shall have been fully completed to the Architect's satisfaction.

"Signed and sealed this 22nd day of July, 1902.
"[Seal.]                            Sherman Orem,
                          "Trading as Sherman Orem & Co.
                          "American Surety Company of New York.
"[Seal.]                            Stephen W. White,
"Attest:                            Resident Vice-President.
    "Edward P. Bailey,
    "Resident Assistant-Secretary."

By the building contract between Sherman Orem & Co., the contractors, and Shelton, the owner, to whom the bond refers, Shelton covenanted and agreed to pay to the contractors, upon certificates of payment obtained from the architect, on the 6th day of each month, the sum of 80 per centum of the value of the labor and material on the ground, and work done—the valuation thereof to be made by the architect—and the final sum 30 days after the full completion of the work contracted for. The building contract also contains the following clauses:

"B. That no payments shall become due until in each case the contractors shall have delivered to the architect copies of all bills and vouchers for work done and materials furnished upon which payment is claimed to be due, or until they have given the architect a true and accurate account of the exact standing of all accounts to date, on their books, for the work herein contracted for and shall have delivered to the owner a satisfactory release of all liens against the premises on the part of all persons who have delivered materials for use in or performed work on said premises together with a true and accurate showing of the state of such persons accounts then due, or thereafter to become due, for materials to be furnished or work to be done under this agreement.

"And it is further agreed: That before the final payment shall become due, a full and complete release of liens, including the liens of the parties of the first part, shall have been delivered to the party of the second part, and accepted by him as satisfactory.

"C. That no liens, attachment or other incumbrance under any law of this State, or otherwise by any person or persons, whosoever, shall at any time be

put or remain upon the building or premises, unto or upon which any work is done or may be done, or materials are furnished or may be furnished under this contract for such work or material, or by reason of any claim or demand against the contractors in respect thereof.

"And it is further agreed: That if at any time there shall be any lien or claim which if established, the owner of the said premises might be made liable and which would be chargeable to the said contractors, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim, until the same may be effectually satisfied, discharged, or cancelled, and should there prove to be any such claim after all payments are made, the contractors do hereby covenant that they will refund to the owner all moneys that the latter may be compelled to pay discharging any lien on said premises, and obligatory in consequence of the former's default.

"And it is further agreed that they, the contractors, shall give a Trust Co.'s or Surety Co.'s bond of twenty-five hundred dollars ($2,500.00) for the faithful performance of the contract and against loss to the owner by reason of any kind of liens; said bond to be acceptable to the owner."

The contractors proceeded with the work, and on certain dates in the months of August, September, and October, 1902, the architect, pursuant to the terms of the building contract, certified that there were due to the contractors specified sums—the same being 80 per centum of the value of the labor and material on the ground and work done, and amounting in all to $5,736.43—which certified sums the owner paid to the contractors. Afterwards the contractors became insolvent and went into bankruptcy, and the owner, agreeably to the provision of the building contract, proceeded with the work and completed the same. Subsequently liens amounting in all to the sum of $4,434.13 were filed against the building for labor done and materials furnished to the same under contracts entered into by the contractors. These liens the owner was compelled to pay. The result was that, by reason of the money he was obliged to pay to complete the work and to discharge the above-mentioned liens, the owner sustained a loss of $2,901.05 by the failure of the contractors to perform the building contract. Thereupon he brought this suit against the surety company upon its bond.

It is not pretended that the plaintiff violated any of the conditions expressed in the surety bond. The defense rests exclusively upon his nonenforcement of the provision in clause B of the building contract, respecting the delivery by the contractors of releases of liens for materials furnished and work done. The contractors did not deliver such releases to the plaintiff when he made to them, as hereinbefore mentioned, the stipulated monthly payments of 80 per centum certified by the architect. Did the plaintiff's omission to exact such releases from the contractors, when he paid to them these certified sums, discharge the surety company from liability for the plaintiff's loss occasioned by the contractors' ultimate default? The answer to this question depends upon the construction of the contract of suretyship. Now, the surety company's bond carefully expresses the limitations which the company put upon its liability. The fourth condition is particularly noteworthy, for its specifies that the obligee shall retain not less than 15 per centum of the value of all work performed and materials furnished until 30 days after the work contracted for shall be fully completed to the architect's satisfaction. In view of this express provision, is there to be imported into the bond the further condition that the obligee shall make no payment

to the contractors on account of the value of work and material without releases of liens? No such obligation is imposed upon the owner by the building contract in express terms. The supposed duty to the surety company to exact such a release upon every payment is inferred from the provisions of clause B which declares that no payment shall "become due" until in each case the contractors shall have delivered to the architect copies of all bills and vouchers, etc., "and shall have delivered to the owner a satisfactory release of all liens against the premises on the part of all persons who have delivered materials for use in or performed work on said premises, together with a true and accurate showing of the state of such persons accounts then due or thereafter to become due for materials to be furnished or work to be done under this agreement." But in my judgment, this clause was intended altogether for the protection of the owner. This is its fair meaning when read in connection with the other provisions of the building contract. The owner's covenant to pay the monthly installments was conditioned only upon the architect's valuation and certificate. Nothing whatever is there said about releases. Therefore, when the plaintiff made his payments, he complied with the express agreement, namely, that the architect should value the work done and materials furnished each month, and that 80 per centum of his valuation should be paid to the contractors. Then, again, clause C of the building contract provides that "no liens * * * shall at any time be put or remain upon the building or premises unto or upon which any work is done or may be done or materials are furnished or may be furnished under this contract for such work or material, or by reason of any claim or demand against the contractors in respect thereof." This is sweeping language. It bars all liens for work done or materials furnished, and for the fulfillment of this prohibition the surety company was bound. The owner was at liberty to rely upon the stipulation against liens. He was not obliged to assume that this provision had been or would be disregarded. It seems to me to be a perversion of clause B to hold that it required the plaintiff to exact releases in the interest of the surety company. The true intention of the clause, I think, was that the owner, at his own pleasure, might further protect himself by releases if he saw any reason for so doing.

In Guaranty Company v. Pressed Brick Company, 191 U. S. 416, 426, 24 Sup. Ct. 142, 48 L. Ed. ——, the court, in rejecting a construction of a bond insisted upon by the surety company, said, "The narrow construction claimed would destroy the principal value of the security." This observation is most apposite here. Indeed, if this obligee was bound to exact a release of liens upon every payment he made to the contractors, the surety bond issued to him was absolutely useless, so far as liens were concerned. Yet if any one thing in this case is clear, it is that this surety company issued its bond as indemnity "against loss to the owner by reason of any kind of liens," as expressed in the building contract, and was pecuniarily compensated for taking that risk. I am not willing to accept a construction of the contract of suretyship which affords this surety company a loophole of escape from its just liability.

I would reverse the judgment of the court below, and order judgment against the defendant.