KEYSTONE TYPE FOUNDRY v. NATIONAL COMPOSITYPE CO.

(Circuit Court, D. Maryland. January 23, 1911.)

TRADE-MARKS AND TRADE-NAMES (§ 93*) — UNLAWFUL COMPETITION — EVIDENCE.

Where, in a suit to restrain unlawful competition in the manufacture and sale of complainant's "Caslon Bold" type, there was no evidence that defendant had ever tried to make any one believe that the type cast on its machines was the type cast by complainant, or that any one who made type on defendant's machines had sold same as complainant's product, or that defendant did anything to induce customers to believe that they were buying type made by complainant, and defendant in its catalogue avoided the use of the words "Caslon Bold" in describing the various type faces that could be made on its machine, the fact that by means of an arrangement of numbers designating the various styles of

defendant's type any one could be easily taught to find in complainant's catalogue the "Caslon Bold" type in controversy was insufficient to establish unlawful competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 106; Dec. Dig. § 93.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by the Keystone Type Foundary against the National Compositype Company. Bill dismissed.

Ernest W. Bradford, for complainant.
Venable, Baetjer & Howard, for defendant.

ROSE, District Judge. This is a case of alleged unfair competition. The plaintiff is a Pennsylvania corporation. It makes type. The defendant is a Delaware corporation. It makes and sells machines for casting type, and makes, sells, and rents matrices with which types of different styles are cast in the said machines. It has its principal place of business in Baltimore City. Suit was brought in this district. Defendant appeared generally and demurred. The demurrer was overruled, without prejudice to the renewal of the objections therein contained at final hearing. Thereupon the defendant answered, and contested the case on its merits.

At or about the time of the institution of this suit the plaintiff in the United States Circuit Court for the District of Maine filed a bill of complaint against the Portland Publishing Company. It was stated at the bar that by agreement of all the parties the evidence in both these cases was taken at the same time. The testimony so taken was to be used in each case, so far as it might therein be competent and relevant. The case against the Portland Publishing Company has already been heard and decided by Judge Putnam. His opinion will be found in 180 Fed. 301.

On the main question involved it is unnecessary to add anything to what Judge Putnam has said. People buy the particular type face in controversy, not because it is made by the Keystone Type Foundary, but because, as complainant's witnesses themselves say:

"It is a desirable type for a wide range of job work, catalogues, and display advertising."

As another witness of complainant says:

"The form of the letters in a great many cases has been changed to make them more practical in modern printing. * * * The old form varied in form, comparative weight, and didn't allow of the new methods in type-founding."

Another witness says:

"It is one of the most popular type faces to-day."

Another of complainant's witnesses says:

"Printers, especially the higher class, are constantly looking for some new style of type, so as to be able to furnish to their customers fashionable and up-to-date printing. * * * New and original designs of faces, if they meet with approval of printers, very largely increase the sale, and very

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

largely increase the use, and therefore largely increase the amount of printing."

This type face is not covered by a design or other patent. Every one is therefore free to make and to sell it, provided that when he sells it he does nothing to lead any one to believe that what is made and sold by him was in fact made by some one else.

There is no evidence that the defendant ever tried to make anybody believe that the type cast upon its machines was type cast by the plaintiff. The record does not show that anybody who made type on its machines sold such type as the product of the plaintiff. There is no proof that the defendant did anything to help its customers make their customers believe that the latter were buying type made by the plaintiff.

The complainant relies much on the case of Enterprise Manufacturing Company v. Landers et al. (C. C.) 124 Fed. 924, affirmed by the Circuit Court of Appeals, Second Circuit, in 131 Fed. 240, 65 C. C. A. 587. That case was like this in one respect, and in one respect only. The defendant there, as here, sold articles which looked precisely like those made by the plantiff. In the Enterprise Case the useful thing involved was a coffee mill. The defendant could make a coffee mill. It could not dress up the nonessential portions of the coffee mill made by it for the purpose of making its mill look like the complainant's mill. In this case the essential thing is the form of type face. Defendant has the right to make and use that form.

It is worth while to note that, while the coffee mill case was doubtless rightly decided, the court which did decide it says that the law was there carried to its extreme limit. See remarks of the Circuit Court of Appeals for the Second Circuit in Rushmore v. Manhattan Screw & Stamping Works, 163 Fed. 942, 90 C. C. A. 299, 19 L. R. A. (N. S.) 269.

The only other question to be considered is whether, assuming that the words "Caslon Bold" are the complainant's common-law trademark, has the defendant infringed on complainant's rights therein?

I assume, for the purposes of this case, that such words do constitute a common-law trade-mark. I do not so decide. To pass on that question would require a careful study of all the type faces shown in the exhibits in this case, to determine whether the particular type face in controversy is anything other than a bold form of other type which has long been known as Caslon type. In the word "Caslon" itself it is admitted that the complainant has no proprietary rights. If it should be determined after such an examination that this type was properly and accurately described as a Caslon type, and that the addition of the word "bold" was the mere use of an ordinary descriptive term in the typographic arts to show that this was a heavy or broad faced variety of Caslon type, it might not be possible to hold that the words "Caslon Bold" could constitute a common-law trade-mark. I do not think it necessary to pass on this question. I find no evidence in the record that the defendant has used the words "Caslon Bold" to assist persons who make type on machines by the use of matrices furnished by defendant to sell the type so made. This particular type

face is a new thing. Its creators gave it the name "Caslon Bold." It has no other name. As Mr. Justice Bradley said:

"As a common appellative, the public has a right to use the word for all purposes of designating the article or product, except one. It cannot use it as a trade-mark, or in the way that a trade-mark is used, by applying it to and stamping it upon the articles." Celluloid Manufacturing Co. v. Cellonite Manufacturing Co. (C. C.) 32 Fed. 94.

In this case the defendant appears to have made every effort to avoid the use of the words "Caslon Bold." In its catalogue it described the various type faces which could be made upon its machines by numbers. The complainant argues that the fact that these numbers were so arranged that by their use any one could be easily taught to find in complainant's catalogue the "Caslon Bold" type is an evidence of fraud. I do not think so. The defendant had the right to furnish machines with which to make that form of type. The most that it was called on to do was to avoid using the words "Caslon Bold" as a means of facilitating its sales or those of its customers. The few occasions upon which the defendant in any wise employed the words "Caslon Bold" seem to me to be nothing more than such casual use of the words, as was inevitable when the thing itself had no other distinctive name.

The bill of complaint must be dismissed, with costs.