[No. 8560.]

UNITED STATES FIDELITY & GUARANTY COMPANY v. CITIZENS BUILDING & IMPROVEMENT COMPANY.

1. PRINCIPAL AND SURETY—*Construction of Contract.* The contract of a compensated surety is to be enforced according to the plain meaning of the words employed.

2. ——*Surety in Builder's Contract*, is entitled to the benefit of those provisions of the contract which look to compelling performance by the contractor.

The contract provided that only eighty-five per cent of the value of materials on hand, and labor and materials expended, should be paid monthly; that before any payment the contractor should exhibit vouchers showing that all his bills were paid, as the work progressed; and that the owner might retain out of each payment an amount sufficient to indemnify him against liens. *Held*, that the contractor's surety was entitled to the benefit of these provisions, and the owner having ignored them and paid the full contract price prematurely, the surety was discharged.

*Error to Garfield District Court.* Hon. JOHN T. SHUMATE, Judge.

Messrs. GILLETTE & CLARK, for plaintiff in error.

Mr. J. W. BELL, Mr. H. B. BABB, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

Action against the United States Fidelity and Guaranty Company, defendant below, on a building contractor's bond, to recover damages alleged to have been sustained through the failure of Matthews, the contractor, to comply with the terms of his contract in the construction and completion of a building. The case was tried to the court, and resulted in a judgment for plaintiff in the sum of $7,705.79.

January 13, 1913, Matthews entered into a written contract with the Citizens Building and Improvement

Company, plaintiff below, hereinafter referred to as the owner, in which he agreed, as the principal contractor, to furnish the materials and perform all the work and labor for the erection and completion, according to plans and specifications, of a three story and basement commercial building in Glenwood Springs, on or before September 1, 1913, for the sum of $32,141.00. The building was finished November 14, 1913; but there were unsettled accounts of the contractor at that time for labor and materials furnished on the building, aggregating $7,350.33, which plaintiff was obliged to and did pay December 31, 1913.

The building agreement, among other things, provides: that the contract price should be paid by the owner as follows: Eighty-five per cent of the architect's estimates of all labor and materials on the ground, and inwrought in the building, the first of each and every month following the date of the contract, that before receiving any payment, the contractor shall exhibit vouchers, releases of lien right, or receipts, showing that all his bills are being paid as the work progresses, that final payment shall be made within thirty days after the completion of the work included in the contract, that if at any time there shall be evidence of any lien or claim for which, if established, the owner of the premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify it against such lien or claims; that no certificate given or payment made under the contract, except the final certificate or payment, shall be conclusive evidence of the performance of the contract, either in whole or in part, and that the contractor shall furnish a good and satisfactory bond in the full amount of the contract price.

Such a bond was executed January 22, 1913, and among other things, it recites: that Matthews has entered into a contract with the building company, dated January 13, 1913, whereby he agrees to construct for it a building in Glenwood Springs, which contract, by reference, is made a part of the bond, and a copy of which is thereto annexed. The conditions of the bond are:

"That if the said principal shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said Obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description incurred in suit or otherwise against the said Obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall repay the said Obligee all sums of money which the said Obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said principal shall pay to the said Obligee all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said principal, or any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void; otherwise the same shall remain in full force and virtue."

The complaint alleges: that plaintiff fully complied with the conditions and performed each and every of the obligations imposed upon it by the terms and provisions of the contract and bond; that the building was completed November 14, 1913; that the contractor failed to pay certain enumerated bills for labor and materials aggregating $7,350.33, and that plaintiff, to prevent the filing of lien claims therefor, paid such bills.

1. On the part of the bonding company it is contended that the building company failed to carry out material provisions of the contract which were made a part of the bond, in that it neglected to require the contractor to exhibit receipted bills for material and labor before making payments; that it did not retain fifteen per cent of the estimates, as required by the contract, and that it made the final payment nearly thirty days before the completion of the building, instead of retaining it until thirty days after the work was fully performed.

It appears from the evidence that the building was erected for the Citizens National Bank of Glenwood Springs; that the building company was merely a holding company for the purpose of erecting the building; that the bank and the building company were controlled by the same directors, one George Bell being secretary and treasurer of the building company and also cashier of the bank; that Bell, as secretary and treasurer, exercised general management and supervision over the affairs of the building company in its construction work and at the same time handled the financial end of the building proposition, through the bank. On the 17th of October, Matthews' foreman, the architect and Bell met in the bank, where the architect handed the foreman the final certificate, showing that Matthews was entitled to $5,068.00, the balance due on the contract. The foreman gave the certificate to Bell, who handed him a check of the building company for the amount, drawn on The German American Trust Company, payable to the order of Matthews. The foreman then endorsed Matthews' name on the check, and returned it to Bell, who deposited it in the Citizens National Bank to the credit of Matthews. Matthews, when he took the contract, was practically without funds, and became more deeply involved financially until, at the time of the final payment, he owed

the bank $2,200.00 on a note for borrowed money, and $2,900.00 on an overdraft. Bell, as cashier, immediately applied the proceeds of this final certificate in payment of the indebtedness to the bank, instead of to the settlement of the construction bills for material, amounting to $6,872.15, which were in the hands of Bell, and which had begun to accumulate, as shown by the estimates, as early as April. After the final payment, the foreman remained on the job and completed the building, under the supervision of Bell, and the architect. During this time the foreman signed Matthews' name to checks drawn on the bank, but in which Matthews had no funds, to pay labor bills, and Bell as cashier, honored these checks. In this way another overdraft of Matthews accumulated at the bank after October 17th, of $478.18, and on December 31st, the building company paid this overdraft and also the unpaid material bills of Matthews, amounting to $6,872.15, making an aggregate of $7,350.33 more than the contract price, which is the amount involved in this suit.

The fifteen per cent was not retained as provided by the contract; receipted bills for labor and material were not exhibited or required, before the payment of certificates based upon estimates; and the final payment on the contract price was made, contrary to the terms of the contract, before the building was completed, and applied to the payment of Matthews' indebtedness at the bank to save it from loss, instead of preserving the fund to meet any contingency which might arise in connection with unpaid bills. The building company evidently relied upon the contractor's bond to make good any outstanding obligations.

2. The contract and bond measured the surety's liability and where the meaning of a contract with a compensated surety is clear and unambiguous, it should be

enforced like other contracts, according to the plain
meaning and intention of the words employed. *Barclay
v. London Co.,* 46 Colo. 558, 562, 105 Pac. 685; *People v.
Beach,* 49 Colo. 516, 518, 113 Pac. 513, 37 L. R. A. (N. S.)
873; *Covey v. Schiesswohl,* 50 Colo. 68, 69, 114 Pac. 292;
*Warner v. Conn. Mut. Co.,* 109 U. S. 357, 363, 3 Sup. Ct.
221, 27 L. Ed. 962; *American Surety Co. v. Pauly,* 170 U.
S. 144, 18 Sup. Ct. 552, 42 L. Ed. 977; *Guaranty Co. v.
Mechanics' Co.,* 183 U. S. 402, 409, 22 Sup. Ct. 124, 46 L.
Ed. 253; *Hormel v. American Bonding Co.,* 112 Minn.
288, 293, 128 N. W. 12, 33 L. R. A. (N. S.) 513; *Long v.
American Surety Co.,* 23 N. D. 493, 137 N. W. 41.

3. The surety was entitled to the benefit of the pro-
visions of the contract: That the contractor should be
required to produce receipts showing that his labor and
material bills were paid, before receiving payments on
the architect's certificates; that fifteen per cent of the
contract price should be retained; and that the final pay-
ment should be withheld until thirty days after the com-
pletion of the building. They were in the bond when
the obligation was assumed, and if taken out by the
obligee, or not recognized or enforced, the surety was
discharged. Who can say if a contractor could be paid
in advance, in disregard of these provisions, and with-
out the protection they afford the bonding company, that
the surety would sign the bond? Here was a fund in
plaintiff's hands, and instead of retaining or disburs-
ing it according to the terms of the contract, it paid the
whole amount to the contractor, relying on the bond for
protection against outstanding labor and material bills.
If it could do this, why not pay the whole contract price
to the contractor at the beginning, and rely on the bond
for the completion of the building? The answer of course
is, that the bond contains no such provision. The surety
had a right to rely upon the agreement of the obligee to

perform these provisions of the contract, and a failure to observe them substituted a different obligation, which it did not assume. The owner could not ignore such provisions, pay the full contract price to the contractor prematurely, and rely upon the bond to make good any deficiency. Such stipulations in a building contract redound to the benefit of the surety in two particulars: they create a sum in the hands of the owner for the surety's protection, and at the same time act as an incentive to the contractor to complete the building. If he receives his compensation without being required to pay his material and labor bills, the pressure upon him to complete the building according to contract is lost, and it furnishes a temptation to abandon, rather than an incentive to complete the contract. If plaintiff may ignore these provisions, it could with equal impunity have paid the full contract price to the contractor, without requiring any evidence that a single cent had been paid to mechanics and material men. Their very purpose is to prevent the contractor from drawing the money to be paid on the contract, and appropriating it to his own use, leaving bills for material and labor entering into the construction of the building, unpaid. We think we may safely say that no bonding company would sign a contractor's bond under the terms of which, such a procedure could result. The agreement to keep the building free from labor and material liens was upon the condition that these provisions should be complied with, according to the terms of the contract. Where the surety is deprived of such safeguards and restrictions contained in a contract and upon the performance of which it had a right to rely when it assumed the obligation, we think it is wholly released from any liability. *Morgan Co. v. Salmon,* 18 N. M. 72, 135 Pac. 553, L. R. A. 1915B, 407; *Kelsay v. Rotsky,* (Tex. Civ. App.), 178 S. W. 837, 841; *County of Glenn v.*

*Jones,* 146 Cal. 518, 80 Pac. 695; *Prairie State Bank v. U. S.,* 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; *Board v. Branham,* (C. C.), 57 Fed. 179; *U. S. v. McIntyre,* (C. C.), 111 Fed. 590, 597; *National Co. v. Long,* 125 Fed. 887, 60 C. C. A. 623; *Shelton v. American Co.,* 131 Fed. 210, 66 C. C. A. 94; *U. S. Co. v. Rice,* 148 Fed. 206, 78 C. C. A. 164; *Fidelity Co. v. Agnew,* 152 Fed. 955, 82 C. C. A. 103; *Gato v. Warrington,* 37 Fla. 542, 19 South. 883; *Long v. American Co.,* 23 N. D. 492, 137 N. W. 41; *Simonson v. Grant,* 36 Minn. 439, 31 N. W. 861; *Hormel v. American Co.,* 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.), 513; *Taylor v. Jeter,* 23 Mo. 244; *Evans v. Graden,* 125 Mo. 72, 28 S. W. 439; *First Nat. Bank v. Fidelity Co.,* 145 Ala. 335, 40 South. 415, 5 L. R. A. (N. S.) 418, 117 Am. St. Rep. 45, 8 Ann. Cas. 241; *Village v. Leonard,* 68 Conn. 495, 37 Atl. 397; *Lawhon v. Toors,* 73 Ark. 473, 84 S. W. 636; *National Co. v. Long,* 79 Ark. 523, 96 S. W. 745; *Eager v. Seeds,* 21 Okl. 524, 96 Pac. 646; *Cowdery v. Hahn,* 105 Wis. 455, 81 N. W. 882, 76 Am. St. Rep. 923; *Electric Co. v. U. S. Co.,* 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; *Greenville v. Ormand,* 51 S. C. 121, 28 S. E. 147; *Backus v. Archer,* 109 Mich. 666, 67 N. W. 913.

The judgment is reversed and the cause remanded with directions to the lower court to enter judgment of dismissal.

*Reversed and remanded.*

CHIEF JUSTICE WHITE and Mr. JUSTICE SCOTT concur.