## No. 10,699.

## AETNA CASUALTY AND SURETY CO. *v.* NORTH STERLING IRRIGATION DISTRICT.

### Decided April 7, 1924.

Action for damages. Judgment for plaintiff.

### *Affirmed.*

1. APPEAL AND ERROR—*Instructions.* Assignments of error relating to instructions will not be considered where the abstract of the record does not contain all of the instructions given by the court.

2. *Abstract—Review.* The Supreme Court restricts its investigations to the printed abstract of the record, and it is not its duty to search the transcript to discover error.

3. PLEADING—*Waiver of Error.* The filing of a demurrer and answer subsequent to the overruling of a motion to strike portions of the complaint, and on the same ground, waives the error, if any, committed in denying the motion.

4. *Demurrer.* A demurrer to a complaint for indefiniteness and setting up a wrong measure of damages, held properly overruled, where under the allegations, plaintiff was entitled to general damages.

5. DAMAGES—*Pleading—Instructions.* A complaint which alleges the breach of a contract to the damage of plaintiff, states a cause of action, although the measure of damages relied upon does not govern, it being presumed that the court will properly instruct as to the measure of damages.

6. *Speculative.* Damages occasioned by the breach of a contract, which it is alleged resulted in the breaking of ditch banks and

damage to property by water, held not so speculative as to preclude a recovery.

7. PRINCIPAL AND SURETY—*Evidence—Cost of Work.* The cost of completing work abandoned by a contractor, held competent evidence of damage in an action on his bond.

8.. *Contract—Damages.* Where the principal in a bond having contracted to do certain work, was not required to commence operations until funds for payment were available, saw fit to begin work before the fund was set aside as provided by the contract, it is held that if the surety was injured by such action it must look to the principal as the sole wrongdoer.

9. CONTRACT—*Rescission.* Where a party to a contract has the right to rescind or not perform until the other party has done a certain thing, he must exercise the right as soon as he has or might have acquired knowledge of the default.

10. PRINCIPAL AND SURETY—*Contract—Retention of Payment.* Where a contract for work to be performed provided that ten per cent of the amount due under the contract should be retained until after the completion of the work, and the contractor being unable to complete the work, withdrew, the surety on his bond could not complain of a technical violation of the ten per cent clause by the owner where it received the benefit of the entire amount which should have been retained.

*Error to the District Court of Logan County, Hon. L. C. Stephenson, Judge.*

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. ELMER L. BROCK, Mr. JOHN P. AKOLT, Mr. ARLINGTON TAYLOR, for plaintiff in error.

Mr. T. E. MUNSON for plaintiff in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE North Sterling Irrigation District, plaintiff below, is a quasi municipal corporation which was organized by owners of arid lands in Logan county. Their purpose was by such instrumentality to acquire a supply of water for the irrigation of 83,000 acres of land within the proposed district. This corporation, under the statutes of this state

possessing such power, duly acquired the right to divert
from a natural stream for storage purposes a sufficient
quantity of water. Its system or works consist of a res-
ervoir with a storage capacity of 83,000 acre-feet with
which to irrigate the included acreage; an intake ditch
leading from the natural stream to the reservoir, about
60 miles long; and an outlet ditch of approximately the
same length from the reservoir running through and
across the lands to be irrigated. Part of the intake ditch
leading from the natural stream, and for a distance of
about 25 miles, meanders around the side of sand hills.
On account of the nature of the soil through which the ditch
was originally constructed, it was subject to breaks caus-
ing loss of water and damage to adjacent lands. To avoid
these breaks and the resultant damages, the district de-
cided to lower the ditch and build it deeper into solid
earth and not to rely, as it theretofore had done, upon
dams to control the ditch water. There were senior ap-
propriators of all the available flow of the natural stream
who needed it for immediate use for domestic and ir-
rigating purposes during the irrigation season from about
June 1, to November 1, of each calendar year. A state
statute does not allow water to be diverted for storage
in reservoirs during such period of time, hence the storage
system of the plaintiff could be operated only during the
nonirrigating season from November 1 of each year until
June 1 of the next succeeding year, by reason of which
the work of rebuilding plaintiff's ditch must be done, if at
all, during that irrigating season. Section 1682, C. L.
1921. In making its contract with the copartnership firm
of Quigley & Bonner, one of the defendants in this action,
there was, for the reasons indicated, inserted a provision
that the work of construction should begin not later than
June 1, 1919, and the entire 25 miles finished and com-
pleted not later than October 31 of the same year. The
contract contained the usual provisions as to the manner
of doing the work, with detailed plans and specifications
which became a part of the contract by appropriate ref-

erence. The contractors began work about the time specified and continued until the expiration of the time limit on October 31 and had completed only about one-third of the required work, approximately 9 out of the 25 miles. As it was apparent to them that they could not comply with the terms of the contract these contractors, of their own volition, refused to go on with it and abandoned the contract. They were paid in full for all the work they had done. It was necessary at this time for the district, in order to store water in its reservoir for the next irrigating season, to begin at once thereafter to run water through the ditch, and further excavation of the ditch during this season necessarily ceased and must be postponed and afterwards completed by the district. The district, therefore, turned water into the ditch for storage purposes and a break occurred therein as the result of alleged defective work by the contractors and because of their default in not completing the work, the water escaped and caused injury to the plaintiff. This action is by the irrigating district against the contractors and the surety company to recover the damages thus occasioned. There was a trial in the district court before a jury, and the verdict was in favor of the plaintiff and the judgment rendered thereon is before us for review at the instance of the surety company, the contractors not appearing in this court.

Plaintiff's grievance is set out in three causes of action. The first is to recover the difference between the contract price for excavating the ditch and the actual cost of completing it; the second is to recover three separate items of damage: the first item is for money which the plaintiff was compelled to pay to the Union Pacific Railroad Company for the repair of its track which was washed out by the escaping water; the second for the repair of the ditch itself; the third for extra compensation paid to additional ditch riders which the plaintiff was obliged to employ to guard against further breaks and which would have been unnecessary had it not been for the alleged de-

fault of the contractors. In the light of the foregoing facts the assignments of error are to be considered.

At considerable length in their briefs counsel for the surety company discuss various questions whose proper solution was solely for the jury. In various answers and affirmative defenses and under appropriate assignments are discussed the alleged failure of the district to supply and furnish the contractors with quantities, a technical term including estimates of the yardage to be excavated; the places where excavation was to take place; the disposition of waste; that the contractors and the owner, without the knowledge or consent of the surety, had settled and adjusted all the differences between them, including the matters involved in this action; that various material changes and alterations were likewise made by the contractors and owner in the terms of the contract without the surety's consent; that the cause of the breaking of the banks of the ditch was not because of defects in the work of the contractors as claimed, but was due to the negligence of the district in turning into its ditch water which at the time carried large quantities of ice, and by attempting to divert into the ditch a greater quantity of water than it was calculated safely to carry. As to these and other alleged similar errors, it is sufficient to say that we have examined with care the record and the briefs of counsel, and are satisfied that no prejudicial error as to any of them was committed either by the court or the jury. One further observation we indulge is as to the assignments of error to instructions given and to instructions refused. These we can not consider, if for no other reason, because the abstract of the record does not contain all of the instructions which the court gave to the jury. The abstract on its face shows that only a part of, but not all, of the instructions delivered to the jury are therein included. Some of these omitted from the printed abstract may have cured the alleged defects now complained of and might have been sufficiently broad and comprehensive properly to present to the jury the issues of fact

and the law of the case. *Bailey v. Harmon,* 74 Colo. 390, 222 Pac. 393. This court restricts its investigation to the printed abstract of the record in determining such assignments. It is for the plaintiff in error to include in the abstract sufficient to disclose error. It is not for the court to search the transcript itself to discover error. The only propositions which merit consideration are these presented at the oral argument by learned counsel for the surety company, and these we now consider, being entirely satisfied that if there is no merit in them, the judgment was right and should be affirmed.

1. The complaint alleges the execution of the contract and its breach by the contractors to the injury of the district. One item of damage claimed was for the difference between the amount the district would have been obliged to pay had the contractors completed the entire work, and the price that must be paid if the work was done by the district or by some other contractor employed by the district. There is a clause in this contract which provides that no suit on the bond for any default whatever shall be brought after twelve months from the date on which the final payment under the building contract falls due. It was necessary, therefore, that this suit should be brought, if at all, within the time alleged. For reasons elsewhere herein stated it was impossible within that time to know the exact cost to the district of having the work, unfinished by the contractors, actually completed by the district. So, in the complaint it is in effect alleged not that this excess amount "did cost," or "has cost," but "will cost,"a specific sum. At the trial, however, the work had been actually done and the exact amount was known. The complaint sufficiently advised and warned the defendants of the elements of damage and they must have known also, for the reasons stated, that this particular element could not be definitely known until the work not done by the contractors had been completed by the district or by some other contractor. For this alleged indefiniteness and for the uncertain or wrong measure of damage relied upon,

the defendant moved to strike such allegations from the complaint. The motion was denied. Afterwards a demurrer upon the same ground was interposed and overruled, and the defendant surety company answered. First, as to the motion, we say that the subsequent filing of the demurrer and answer, after the motion had been overruled waives error, if any, to the ruling of the court denying the motion. *Sweet v. Barnard,* 66 Colo. 526, 182 Pac. 22. As to the demurrer, we say that, in the nature of things, we think any indefiniteness about the amount of this excess cost as an element of damage is justifiable under the facts above stated. In any event the demurrer was properly overruled because under the general allegations of the complaint the plaintiff was entitled to general damages or such as approximately resulted from the alleged breach of the contract. *Tucker, Sheriff, etc. v. Parks,* 7 Colo. 62, 1 Pac. 427; *City of Pueblo v. Griffin,* 10 Colo. 366, 15 Pac. 616; *School Dist., etc., v. Ross,* 4 Colo. App. 493, 496, 36 Pac. 560.

The real objection argued under these assignments concerning the motion and the demurrer is to the alleged improper measure of damage thereby indicated. The defendant itself relies upon, and has cited authority to, the proposition that where a contractor fails to perform a contract to do certain work, the measure of damage is the cost to the owner of having it done by another, less the contract price if that has not been paid. As we understand the record, that is the rule invoked by the plaintiff and the one which the court applied in its instructions to the jury. The real objection made to the pleadings does not raise the point in question, for if the contract, as it does, alleges that it has been breached to the damage of the plaintiff, a cause of action is alleged even though the measure of damage relied upon is not the one that governs. It is presumed that the court, at the appropriate time, will properly instruct as to the measure of damage and there is nothing in this record to show that the court did not do so.

In so far as concerns the point made by the defendant that the damages claimed are speculative and remote and not the proximate result of the breach, we think there is no merit in the contention. It would seem that the washing away of the railroad track by the waters that escaped from the ditch, was a result that was not only to be anticipated or apprehended in case the ditch broke and the waters escaped, but it was, if not inevitable, certainly the reasonable and ordinary result thereof. Some of the elements of damage claimed by the plaintiff were disallowed, but the amounts which the district was obliged to pay to the railroad company for the repair of its track, and of its own ditch, and compensation for ditch riders, were not speculative or remote, but the natural and ordinary damages to be apprehended in such case. It may be that the surety company is not bound to pay for the completion of the work and for the repairs, the exact amount which the district actually paid. This cost or price, however, was shown and it is at least evidence of the damage sustained. If the surety company or the contractors were able to show that the cost of the work was excessive or might have been done for less, it was their privilege to do so, and it seems they offered no evidence as to this branch of the case.

2. In the building contract is this paragraph: "It is further agreed between the parties hereto that the party of the second part (the contractors) shall not be required to do any work for which the money to pay the same has not first been made available by proper levy and collection of taxes and in the hands of the Treasurer of the said District and set aside in a fund provided by the Treasurer's office for this purpose."

It will be observed that there is no inhibition in this clause which prohibits the contractors from beginning this work, if they see fit, before such levy and collection are made and the separate fund set aside. It merely says that the contractors shall *not be required* to do any work before these specified things have been done. In its first

affirmative defense based upon this clause of the contract, the surety company does not say that it was not complied with up to the time that the contractors abandoned work. The allegation with respect thereto is that for the unfinished part of the work to be done, not theretofore done, under the contract, money to pay for the same was not made available because, although the levy and collection had been made, the money had not been set aside in a separate fund. First, we say that this provision does not apply at all to the uncompleted part of the work. There was no necessity to have or retain in any fund money to pay for work which the contractors refused to do and which their abandonment of the contract made it impossible for them to do. Indeed the amount to be retained could be ascertained only if the work was done; if no work was done, no estimate could be made and nothing could be retained. The record shows that a levy was made that produced a larger sum than was required to pay for the entire work under the contract had it been entirely completed by the contractors, although it was not put into a separate fund. The surety company assumes that this clause was in whole or in part for its benefit. We fail to perceive any intimation or indication in the contract that such was the intention or its purpose, or that its nonobservance did or could work any injury to the surety. But if it was in part for the surety's benefit, and for our present purpose we so assume, under the facts of this case it constituted no defense to this action and does not discharge the surety. No complaint of the alleged failure, or literally to comply with this clause, was made until about the time the contractors abandoned the work and when they were convinced that they would not be able to complete the contract. We have already said that the clause ceased to apply as to the uncompleted work, but, if it were otherwise, the record is clear that the district did not ask or require the contractors to begin work before the levy was made, or insist that they should do so before a separate fund was created. If the contractors

saw fit, as they did, before the separate fund was created and set aside, it was their privilege to begin work. If the surety was injured by the voluntary action of the contractors, its principal, in beginning work before the condition precedent was complied with, the injury was caused by the act of its own principal for whose performance of the contract it gave the guaranty. The owner of the ditch did not contribute to the wrong. The surety must look to its principal, the sole wrongdoer. No deception was practiced upon the contractors nor is there any satisfactory evidence that they were unaware of the alleged failure of the district to create the fund. The contract provided that monthly payments were to be made upon the estimate of the amount due for the current month, the full amount of which was to be paid, less 10 per cent hereinafter referred to, which was to be retained by the district until the work was completed. The contractors were paid all they were entitled to when they abandoned the work, and do not claim any balance due them. Assuming that this clause with reference to a levy and a separate fund, constitutes a condition precedent to the taking effect of the contract, it certainly could be waived by the contractors by beginning work either without insisting upon performance or without stopping to inquire whether the condition had been complied with. They knew, or had the means of knowledge within their reach of informing themselves about this. Even though the contract of the surety is *strictissimi juris,* there was no violation of the terms of the contract in this particular of which it may now complain, even if the clause in question was, in part or in whole, for its benefit. 5 Page on Contracts, § 3038. This principle is similar to the established rule that where a party to a contract has the right to rescind or not to perform until the other party has done a certain thing, he must exercise his right as soon as he has knowledge, or might have acquired knowledge, of the alleged default. This is its application here: If the contractors might not be obliged to begin work until this

condition was complied with, they knew or might have known before they began work that the other party had not complied with it.  A party may not "play fast and loose" at the same time and await results and then make his election.  If the surety was injured, it must look to the party that inflicted the injury.  *Halm v. Wright,* 63 Colo. 419, 168 Pac. 36; *Railway Co. v. McCarthy,* 96 U. S. 258, 24 L. ed. 693.

3.  The point apparently upon which chief reliance for reversal is based is that the district failed to retain 10 per cent of the amount due the contractors until the completion of the contract.  A clause in the contract requires the district to retain this percentage.  In *United States Fidelity & G. Co. v. Citizens Bldg. & Imp. Co.,* 62 Colo. 440, 163 Pac. 281, this Court, as to a similar clause in the contract before it, said that it was for the benefit of the surety as well as for the owner, for such provisions "create a sum in the hands of the owner for the surety's protection, and at the same time act as an incentive to the contractor to complete the building."  The court there held that for a violation of the stipulation by the owner, the surety was discharged.  If the facts of this case were the same as in that, we would follow the rule there laid down, but the facts are essentially different here and there is also a provision of this contract that seems not to have been in the contract there, or, at least not referred to. The facts are that the 10 per cent was retained by the district until after the contractors had abandoned the work and had been paid the full amount due them.  It seems that some part of this 10 per cent was thereafter applied by the district to the payment of labor and material bills that went into the construction of the ditch, which payment the district claimed it had the right to apply under the following provision of the surety bond:

"The condition of this obligation is such that if the Principal shall faithfully perform the contract on its part to be performed, according to plans and specifications, and hold the obligee harmless from any damages resulting

from the acts of the Principal, either carelessly, negligently or otherwise, and pay all bills for labor, material, and other bills which might in any manner become a lien against the property of the obligee were the same unpaid, then this obligation shall be null and void; otherwise it shall remain in full force and effect.''

This contract contemplated that one object of the retained 10 per cent was to enable the surety to pay bills of this character which it was the primary duty of the contractors to pay and the secondary duty of the surety to pay if the contractors defaulted. This contract itself would seem to justify the district in so applying the retained percentage. Counsel for the surety company say this is not so, because the bills in question which the percentage retained was applicable to were only such bills as might constitute a lien against the property of the district, the obligee in the bond. If it were necessary to a decision of the point presented, the language employed might be held to mean that the surety company bound itself to pay absolutely all bills for labor and material, and, in addition, further bills, that is, bills that were not for labor and material, but which might in any manner constitute a mechanic's lien. In other words, two kinds or classes of bills are contemplated; one for labor and material, the other, such as might become a lien. If that construction is permissible the surety should not be heard to say that the entire clause in question is meaningless because no bills of any kind against an irrigation district could become liens against its property. Unquestionably such is the law as to liens, but the surety company would not be in a position to claim that the clause in question is meaningless merely because there can be no mechanic's lien against an irrigation district if such construction was adopted by us.

But if not so, aside from this, and that is as far as we need to go, and even if the clause has no meaning and the owner has no right to apply any part of the percentage to the payment of labor and material bills, the surety

may not complain. The court instructed the jury to deduct, and it did deduct, all of this retained 10 per cent of the monthly estimates from the amount of the damage which the jury found the district had sustained by reason of the wrongful acts of the contractors. Even applying the strict rule in favor of the surety, there has been no violation of this provision of the contract requiring the owner to retain a certain amount of the estimates. If the amount of this damage was as found by the jury, the surety company agreed to compensate the owner therefor. In deducting the retained percentage, which was the full amount which the district was required to hold back from the entire work actually done by the contractors, and which the jury did deduct from the amount of the damages inflicted, the surety company got the benefit of the entire retained percentage just as much as if the contractors had delivered to it in money the amount thereof. It is true that there are decisions which hold that a contract of this nature, if violated, relieves the surety, although it has sustained no damage. If we are right in the foregoing discussion, the surety company in reality has not only sustained no damage, but the clause in question, rightly considered under the facts, has not been violated. But, if it had, we think the decision in *Guaranty Co. v. Pressed Brick Co.,* 191 U. S. 416, at page 426, 24 Sup. Ct. 142, 144, 48 L. Ed. 242 is applicable. The court there said that the rule of *strictissimi juris* "is a stringent one and is liable at times to work a practical injustice," and "ought not to be extended to contracts not within the reason of the rule." In that case there was an extension of credit contrary to the terms of a surety bond, with no evidence of loss thereby occasioned, and it was held not sufficient to discharge the surety. The principle of that decision is based in part upon the fact that the surety company was, as it is here, a surety for hire and not merely an accommodation surety with no compensation. Here the 10 per cent was retained until the entire work which the contractors actually did in excavating the ditch was com-

pleted. They then abandoned it. They had not paid some labor and material bills. The district applied some of the retained percentage in its hands to their payment. The surety company would have been obliged to pay these bills by the terms of its contract had not the district itself applied thereto the retained percentage. But the trial court denied this right to the district thus to apply the retained percentage, and of this ruling the surety company does not complain for the ruling was in its favor. Moreover, the court directed the jury, and the jury obeyed the instruction, to deduct from damages which the district sustained, the retained percentage. The surety company, therefore, got the benefit of the retained amount, even if technically there was a violation of this clause because the district at first paid out a part of the retained percentage and such payment was a violation of its duty to retain the entire amount for the benefit of the surety. The result of the direction of the trial court gave to the surety all that it could claim under this clause, even if the strict rule of *strictissimi juris* is applied in all its severity. The principle referred to by Mr. Justice Brown in the foregoing case is that when the reason for a rule ceases, the rule itself should not be enforced. Stipulations in a building contract for the retaining of a percentage redound to the benefit of the surety in two particulars as already stated: They provide a fund in the hands of the owners for the surety's protection, and act as an incentive to the contractor to complete the building. These are the reasons for the rule. Both purposes or objects have been fully accomplished here. The owner retained the full percentage until the contractors abandoned their contract. The percentage thus retained furnished the incentive to the contractors, even though its potency did not secure full performance. So also the application of the retained percentage to the surety's adjudged liability for the principal's damage to the owner redounded to the benefit of the surety. The reasons for holding a surety discharged by failure to retain the per-

centage having ceased to exist, the rule itself should not be applied.

Considering the record in its most favorable light to the defendant surety, it has no grievance. There being no substantial or prejudicial error, the judgment is affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.